JUSTICE SOLOMON delivered the opinion of the Court.
**8 This appeal raises the question whether, in cases involving a search warrant, Rule 3:4-2(c)(1)(B) obliges the State to produce the affidavit underlying the warrant prior to a pretrial detention hearing pursuant to the Criminal Justice Reform Act (CJRA), N.J.S.A. 2A:162-15 to -26.
During defendant Melvin Dickerson's pretrial detention hearing, the court denied the State's motion for pretrial detention.
*792 Relying on Rule 3:4-2(c)(1)(B), the court ordered defendant released subject to conditions as a discovery sanction for the State's failure to produce the search warrant affidavit.
On interlocutory appeal, the Appellate Division agreed that the State was obliged to produce the affidavit but held that the trial court erred by releasing defendant as a discovery sanction. Therefore, the Appellate Division directed the State to produce the affidavit and remanded for a full pretrial detention hearing.
We now reverse the Appellate Division's judgment ordering production of the search warrant affidavit. We further find no evidence or allegation of misconduct on the part of the State justifying discovery sanctions for failure to produce the search warrant affidavit. Thus, we agree with the Appellate Division that the pretrial release of defendant was in error and that the case should be remanded for a full pretrial detention hearing.
I.
The following facts are elicited from record documents, including the search warrant, the incident report prepared by police, and the complaint-warrant.
A.
After multiple meetings with a confidential informant discussing the sales of controlled dangerous substances (CDS), police officers with the Asbury Park Police Department (APPD) applied for a warrant to search Welcome Back Unisex Hair Cuts, a barbershop/hair **9 salon in Asbury Park (the salon). A Superior Court judge reviewed the application and issued the warrant. The warrant did not name any individuals as targets of the search but simply stated that the requesting officer had "probable cause to believe" that within the salon "[t]here has been and now is located certain" contraband.
Upon execution of the search warrant, the APPD officers found four men inside the salon, including defendant and co-defendant Julius Franklin (Franklin). Defendant was observed to be at the rear of the salon when the police entered, near where drugs and guns were later found. When questioned, Franklin told the officers he worked at the salon. Defendant, however, was "uncooperative." One of the two other men present told the officers that he was at the salon waiting for a haircut; the other stated he had just "stopped in ... briefly and was not employed [at the salon]."
The officers then conducted a search of the salon. The search revealed thirty-one pieces of evidence including two plastic bags of suspected marijuana, a 9mm sub-machine gun, a .38 caliber semi-automatic handgun, a stun gun, ammunition, two digital scales, a heat-seal vacuum, a box of Ziploc vacuum sealer gallon bags, a suspected police scanner, a cell phone, a State of New Jersey Certificate of Authority addressed to defendant, an expired City of Asbury Park Barbershop/Salon License addressed to a Barbara Dickerson, and several more documents addressed to defendant at the salon. After the search, officers arrested Franklin and defendant.
That same day, a complaint warrant was issued charging defendant with ten crimes: 1) fourth-degree possession of over one-half ounce of marijuana, N.J.S.A. 2C:35-10(a)(3) ; 2) third-degree possession of marijuana with intent to distribute, N.J.S.A. 2C:35-5(b)(11) ; 3) third-degree possession of marijuana with intent to distribute in a school zone, N.J.S.A. 2C:35-7(a) ; 4) fourth-degree unlawful interception or use of official communications, N.J.S.A. 2C:33-21 ; 5) two counts of second-degree possession of a firearm while in the course of committing a narcotics offense, **10 *793 N.J.S.A. 2C:39-4.1(a) ; 6) fourth-degree possession of a defaced handgun, N.J.S.A. 2C:39-3(d) ; 7) second-degree unlawful possession of a machine gun, N.J.S.A. 2C:39-5(a) ; 8) second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1) ; and 9) fourth-degree unlawful possession of a stun gun, N.J.S.A. 2C:39-3(h). The complaint warrant was based upon an affidavit of probable cause that stated "pursuant to the execution of a search warrant ... [defendant] was arrested after being found to be in possession of suspected CDS, weapons, and contraband."
At defendant's pretrial detention hearing, the State moved to detain defendant. In connection with the hearing, the State disclosed the Preliminary Law Enforcement Incident Report (PLEIR),[1] the complaint, the supporting affidavit of probable cause, the Public Safety Assessment (PSA), and the incident and arrest reports. Defendant's PSA rated both his risk of failure to appear and his risk of new criminal activity as a three out of six. No violence flag was indicated. The PSA recommended that defendant be released pretrial with conditions and monthly reporting.
During defendant's pretrial detention hearing, the judge explained to defendant that he had "the right to be provided with all statements or reports in the prosecutor's possession relating to the pretrial detention application." At that point, defense counsel claimed that he had received "limited discovery," because "the affidavit to support the search warrant is absent." When asked whether the State had the affidavit in its possession, the State responded that it did not have the affidavit and that it was "not relying upon the affidavit." The judge found that the affidavit must be produced, stating:
**11 It doesn't matter what you're relying on. If it relates to the motion, it must be produced. The Rule does not speak to what information the State intends to rely upon. That is not the litmus test for what must be produced. It is anything that relates to the application. The defendant is entitled to have all of that information.
The State further argued that "[t]he affidavit is not referenced in the PLEIR" and "has nothing to do with the probable cause that is related to this offense." The court, however, found that the affidavit "should be produced .... whether the State is intending to rely on it or not" and, as a sanction, released defendant with conditions.
A day after defendant was released, the Appellate Division decided State v. Robinson, 448 N.J. Super. 501, 154 A.3d 187, aff'd and modified, 229 N.J. 44, 160 A.3d 1 (2017), and the State moved for reconsideration based on the holding in that case. At the reconsideration hearing, the State argued that "the only basis for which the Defense would be able to use the affidavit in support of the search warrant would be to attack the probable cause" for the search itself-a question not at issue at the pretrial detention stage. The State also argued that "the appropriate remedy here would not be simply to release the defendant, but for the Court to issue an order ... specifying what documents that the State is to produce." The State's motion for reconsideration was denied, and the Appellate Division granted the State's request *794 for leave to file an interlocutory appeal.
B.
The Appellate Division affirmed the trial court's ruling that the State was required to produce the search warrant affidavit. However, the Appellate Division reversed the trial court's decision to release defendant and remanded for a pretrial detention hearing-both to determine whether defendant should be detained and to determine the appropriate sanctions, if any, for the State's failure to provide the search warrant affidavit.
Specifically, the appellate panel held that, when the State's evidence in support of pretrial detention is largely dependent on **12 items seized under a search warrant, the affidavits underlying that warrant are relevant evidence relating to probable cause. The appellate panel relied on the text of Rule 3:4-2(c)(1)(B), as well as the sixth, seventh, and tenth principles in State v. Robinson that this Court stated "should govern the disclosure of evidence at a detention hearing": (6) "All statements and reports relating to the affidavit of probable cause should be disclosed"; (7) "All statements or reports that relate to any additional evidence the State relies on to establish probable cause at the detention hearing should be disclosed"; and (10) "The phrase 'statements and reports' refers to items that exist at the time of the hearing. The terms plainly include relevant police reports." 229 N.J. 44, 69-71, 160 A.3d 1 (2017).
The appellate panel rejected the State's contention that warrant-related materials need only be produced post-indictment, holding that the first exception to Rule 3:5-6(c) applied-"the warrant and accompanying papers shall be provided to the defendant in discovery pursuant to R. 3:13-3"-and that Rule 3:4-2(c) controls the timing of disclosure. The Appellate Division also held that any confidentiality concerns regarding production could be remedied by a protective order, which the State did not seek.
The appellate panel affirmed the trial court's ruling compelling the State to produce the search warrant affidavit but vacated the portion of the trial court's order that denied pretrial detention without a hearing. The appellate panel found that the trial court never explained the reasons for imposing the "sanction" of releasing defendant or why the sanction was justified under the circumstances. Hence, the appellate panel remanded for a pretrial detention hearing to evaluate whether the State acted in good faith when it did not produce the underlying affidavit, as well as whether the trial court considered sanctions other than summary denial of the State's pretrial detention application.
We granted the State's motion for leave to appeal. 230 N.J. 544, 170 A.3d 325 (2017). We also granted the motions of the American Civil Liberties Union of New Jersey (ACLU) and the County **13 Prosecutors Association of New Jersey (CPANJ) to participate as amici curiae.
II.
A.
The State asserts that, at the pretrial detention stage, its burden is only to establish probable cause and the defendant's risk of danger, flight, and obstruction. According to the State, an expansive discovery obligation at the pretrial detention stage would strain the judicial system. Further, the State argues that search warrant affidavits are not relevant at the pretrial detention stage.
The State contends that defendant was not charged with any crimes predicated *795 upon activity that occurred before the search of the salon-only upon what police found there. Thus, the search warrant and related affidavit do not establish either probable cause for any charged offense or defendant's risk of danger, flight, or obstruction.
The State claims that the twelve principles governing disclosure of evidence at pretrial detention hearings set forth in Robinson all provide that discovery must be "keyed" to the State's two tasks at the pretrial detention stage-establishing probable cause and risk of danger, flight, or obstruction. Thus, in the State's view, because defendant's charges stem only from evidence seized upon execution of the search warrant, and not from the search warrant application, the warrant application materials are not "keyed" to the State's dual burdens.[2]
The State points out that Rule 3:5-6(c), which governs the confidentiality of warrants and ancillary materials, allows for an **14 exception under Rule 3:13-3 but not pursuant to Rule 3:4-2(c)(1)(B). Furthermore, the State notes that this Court adopted a version of Rule 3:4-2 that did not include a proposed reference to Rule 3:13-3 in order to mark the difference between pretrial detention discovery and post-indictment discovery.
The State stresses that search warrants often incorporate information gleaned from the undercover work of confidential informants. Given the short arrest-to-detention-hearing schedule the CJRA imposes, the State argues that production of search warrant affidavits would often endanger confidential informants by making their identity easily discernable.
The State acknowledges that the materials it relies on to establish probable cause may be a subset of the materials that are relevant to probable cause. The State argues, however, that if it chooses to rely on less than all the relevant materials, it "runs the risk that the court will deny its pretrial detention application."
B.
Defendant argues for affirmance of the Appellate Division's decision. Defendant claims that the State's production obligation is " 'not limited to documents upon which the State claims to rely' ... and instead extends to all materials related to 'the factual assertions contained in the probable cause affidavit' ... or that 'can be expected to provide the basic background facts' concerning the crime and charges." (quoting Robinson, 448 N.J. Super. at 517, 520, 154 A.3d 187 ). Defendant also urges that "discovery 'must reflect' the fact that defendants face a complete loss of liberty and must be able to challenge the State's detention application." (quoting Robinson, 229 N.J. at 68, 160 A.3d 1 ). Hence, in defendant's view, production of the affidavit in this case was necessary to establish the connection between himself and the contraband he was alleged to possess. Without the affidavit, defendant argues, the State can establish only that defendant-like multiple other individuals-was present at the salon where contraband was found.
**15 "As a result," defendant argues, his "only established connection to the contraband is that he, like two uncharged individuals, was present during the search, and that he may have worked at [the salon]." "Any additional information concerning *796 [his] connection to the contraband, or lack thereof, would therefore relate to the State's [pretrial detention] application as much as anything previously disclosed in discovery."
Defendant further argues that his approach harmonizes Rule 3:5-6 and Rule 3:4-2. According to defendant, the State's interpretation "would render Rule 3:4-2(c)(1)(B) moot whenever a case involves a search warrant."
Finally, defendant argues that the State has "made clear" that concerns preventing disclosure, and justifying a protective order, are not present here because the State did not seek a protective order.
C.
Amicus ACLU does not argue that the State must produce search warrant affidavits in every case but claims that such production is required when: 1) the defendant is arrested in a place other than his home; and 2) there is no evidence of the defendant's control over contraband found at the time of arrest. In the ACLU's view, the Appellate Division's holding "need only apply where the seizure of contraband serves as a basis for pretrial detention and the location of the seizure alone is insufficient to show a nexus between the defendant and the contraband." The ACLU argues that no production is required where the contraband is found in a room owned or rented by the defendant, or on the defendant's person, because the nexus between the defendant and the contraband in such situations is already clear.
Lastly, the ACLU argues that the State can avoid otherwise-compulsory production by obtaining a protective order where merited-that is, on a case-by-case basis and on a showing of "legitimate, specific security concerns." The ACLU points out **16 that, in this case, the State was aware it could move for a protective order and explicitly chose not to seek one.
D.
The CPANJ agrees with the State. The CPANJ argues that because warrant confidentiality is paramount, this Court's rules permit post-execution disclosure in only two scenarios: 1) post-indictment discovery; and 2) disclosure to any person claiming to be aggrieved by an unlawful search and seizure. Similarly, the CPANJ notes, this Court has made search warrants an exception to the general public availability of criminal case records.
In that vein, the CPANJ asserts a broad public policy interest in warrant confidentiality, emphasizing that warrants may describe ongoing investigations, active wiretaps, identities of confidential informants, identities of uncharged but implicated individuals, and witnesses. Therefore, the CPANJ asserts that the rule for which defendant advocates would force the State to move for a protective order in an inordinate number of cases, transforming protective orders from the exception to the rule and unduly burdening prosecutors.
The CPANJ also argues that, given how quickly law enforcement must act on warrants to forestall a staleness defense and how soon detention hearings must follow arrest, requiring warrant affidavit production would increase the probability that confidential informants would be identified and potentially subjected to retaliation. In the CPANJ's view, the Appellate Division did not read Rule 3:5-6(c) "in harmony" with Rule 3:4-2(c), but rather read Rule 3:4-2(c) to entirely trump the warrant confidentiality rule.
The CPANJ notes that law enforcement typically does not rely on information in search warrant affidavits in preparing affidavits of probable cause and adds that the warrant materials in this case did not relate *797 to probable cause or pretrial detention. Thus, the warrant affidavit here did not fall within the State's production obligation, according to the CPANJ. **17 III.
This case presents a narrow question regarding the State's discovery obligation at the pretrial detention stage left unanswered in Robinson-whether Rule 3:4-2(c)(1)(B) obliges the State to produce the affidavit underlying a search warrant in a pretrial detention hearing.
Appellate review of the meaning of the New Jersey Court Rules is de novo. Robinson, 229 N.J. at 66, 160 A.3d 1 ; State v. Hernandez, 225 N.J. 451, 461, 139 A.3d 46 (2016). "We apply ordinary principles of statutory construction to interpret the court rules and start with the plain language of the Rule." Robinson, 229 N.J. at 67, 160 A.3d 1.
A.
The CJRA "allows for pretrial detention of defendants who present such a serious risk of danger, flight, or obstruction that no combination of release conditions would be adequate." Id. at 54, 160 A.3d 1. "After a complaint-warrant is issued, eligible defendants 'shall be temporarily detained to allow the Pretrial Services Program to prepare a risk assessment' and recommend conditions of release." Id. at 55, 160 A.3d 1 (quoting N.J.S.A. 2A:162-16(a) ).
"When a prosecutor applies for pretrial detention, the defendant is held pending a hearing." Id. at 57, 160 A.3d 1. "At the hearing, the defendant has the right to counsel and ... the right to testify, to call witnesses, to cross-examine witnesses who appear, and to present information by proffer or otherwise." Id. at 58, 160 A.3d 1 (citation omitted). "In the end, if a court orders detention, its decision must be supported by clear and convincing evidence." Ibid.
"[T]he [CJRA] calls for a determination of probable cause and an assessment of the risk of danger, flight, and obstruction, which may include consideration of the nature and circumstances of the offense and the weight of the evidence ...." Id. at 69, 160 A.3d 1 ; see also N.J.S.A. 2A:162-18(a)(1) ; -19(e)(2); -20(a), (b). The statute **18 does not, however, specify what discovery must be turned over to defendants as to those proofs.
We addressed the issue of discovery in crafting rules to guide the implementation of the CJRA. This Court's Criminal Practice Committee issued a report, which became part of the legislative history of the rules eventually adopted. See Robinson, 229 N.J. at 59, 160 A.3d 1 ; see also Report of the Supreme Court Committee on Criminal Practice on Recommended Court Rules to Implement the Bail Reform Law, Part I: Pretrial Release (May 9, 2016); Report of the Supreme Court Committee on Criminal Practice on Recommended Court Rules to Implement the Bail Reform Law, Part II: Pretrial Detention & Speedy Trial (May 12, 2016). The report indicated that "[t]he Committee divided sharply about the amount and type of discovery that should be required for pretrial detention hearings." Robinson, 229 N.J. at 59, 160 A.3d 1. Ultimately, the Court amended Rule 3:4-2 to set parameters for that discovery. See R. 3:4-2 (as amended Dec. 6, 2016).
In Robinson, one of the earliest CJRA cases, this Court revisited those parameters in connection with a discovery dispute. We underscored that the State must carry a twofold burden at pretrial detention hearings-to demonstrate probable cause and to overcome the presumption of pretrial release-and noted that "discovery *798 should likewise be keyed to both areas." 229 N.J. at 69, 160 A.3d 1. We accordingly clarified and amplified the meaning of Rule 3:4-2(c)(1)(B). Id. at 71-72, 160 A.3d 1.
In so doing, we identified twelve "principles" that "govern" the disclosure of evidence at a detention hearing, id. at 69-71, 160 A.3d 1, many of which are relevant here. "All exculpatory evidence must be disclosed." Id. at 71, 160 A.3d 1. Further, there are specific documents that the State must turn over: the complaint, the PSA, the PLEIR, and the affidavit of probable cause. Id. at 69, 160 A.3d 1. We specified that, "[i]f a similar document with a different name is used [instead of an affidavit] to establish probable cause, that document must be disclosed." Ibid. We also required the State to provide the defendant with "[a]ll statements **19 and reports relating to the affidavit of probable cause ... In other words, if an affidavit of probable cause describes what a police officer or witness observed, an initial police report or witness statement that relates to those factual assertions must be disclosed." Id. at 70, 160 A.3d 1. Disclosure is also required for "statements or reports that relate to any additional evidence the State relies on to establish probable cause at the detention hearing." Ibid."For example, if the State, at the detention hearing, refers to a witness whose observations are not discussed in the affidavit of probable cause, all statements and reports relating to the additional witness should be disclosed." Ibid.
In addition to those requirements, we offered two important definitions in Robinson. First, we noted "[t]he phrase 'statements and reports' refers to items that exist at the time of the hearing. The terms plainly include relevant police reports." Id. at 70-71, 160 A.3d 1. Second, we stressed that, although the phrase "relate to" can be construed broadly, see Webster's Second New College Dictionary 935 (2d ed. 2001) (defining "relate" as "[t]o have a connection, relation, or reference"), it must be given a workable meaning in New Jersey jurisprudence, see Robinson, 229 N.J. at 72, 160 A.3d 1 ("Judges must also be mindful of practical concerns ... there may be dozens of police reports at the time of arrest that arguably relate to the affidavit of probable cause.").
To implement the principles we identified, this Court exercised its Article VI rulemaking power to bypass the committee process and directly revise Rule 3:4-2(c) in the text of Robinson. Id. at 72, 74, 160 A.3d 1 ; see also N.J. Const. art. VI, § 2, ¶ 3. Under Rule 3:4-2(c), as modified by Robinson, a prosecutor seeking pretrial detention must now provide defense counsel with five categories of materials:
[1] the discovery listed in subsection (A) above [ (i.e., "a copy of any available preliminary law enforcement incident report concerning the offense and the affidavit of probable cause") ],
[2] all statements or reports relating to the affidavit of probable cause,
[3] all statements or reports relating to additional evidence the State relies on to establish probable cause at the hearing, **20 [4] all statements or reports relating to the factors listed in N.J.S.A. 2A:162-18(a)(1) that the State advances at the hearing,[3] and
[5] all exculpatory evidence.
*799 [ Robinson, 229 N.J. at 71-72, 160 A.3d 1 ; R. 3:4-2(c)(1)(B).]
The revised Rule 3:4-2(c) provides defendants with "far broader discovery" than they are entitled to at the pretrial detention stage in the federal system, Robinson, 229 N.J. at 61, 160 A.3d 1, and represents this Court's carefully considered attempt to strike a balance between the significant competing interests at stake, see id. at 76, 160 A.3d 1. We noted in Robinson that making the State's discovery obligation at the pretrial detention stage any "broader" would "impose a greater administrative burden on the State" and thereby risk "frustrat[ing] the purpose of the [CJRA]." Id. at 76, 160 A.3d 1. After all, "in light of the [CJRA's] very tight time constraints," under a broader discovery obligation, "the State might be forced to limit detention motions based on the resources it can devote to discovery in the days after an arrest, and not its assessment of the risk of danger, flight, or obstruction that a defendant poses." Ibid.
We further stressed the need for balance by instructing that Rule 3:4-2(c)'s pretrial discovery requirements must "be read in conjunction with Rule 3:13-3, which obligates the State to provide full discovery when it makes a pre-indictment plea offer or when an indictment is returned or unsealed." Id. at 72, 160 A.3d 1. That does not mean that the requirements of the two rules are identical; on the contrary, the Court declined to adopt during the rulemaking process a proposal that would have collapsed the distinctions between the two. See id. at 60-61, 160 A.3d 1.
Rather, the instruction mandates the adoption of "a workable standard," id. at 68, 160 A.3d 1 -one that does "not impose **21 impractical demands on law enforcement" and that balances both "the law's tight timeframe," ibid., and the limited purpose of detention hearings, which "are not full-scale trials designed to assess guilt," id. at 73, 160 A.3d 1, against "the defendants' liberty interests," id. at 68, 160 A.3d 1, and the fact that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception," ibid. (quoting United States v. Salerno, 481 U.S. 739, 755, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ).
That mandate is not self-executing, however. And although Robinson provides a great deal of guidance as to discovery requirements in pretrial detention proceedings, it does not discuss search warrant affidavits. Nor did the report by the Criminal Practice Committee refer to the discoverability of search warrant affidavits at the pretrial detention stage. We therefore turn to the rules that address search-warrant discovery in general for guidance.
B.
The court rules regarding warrants and supporting documents predate the CJRA. "A search warrant shall be issued with all practicable secrecy and the affidavit or testimony upon which it is based shall not be ... made public in any way prior to execution," with disclosure punishable by contempt. R. 3:5-4. After the warrant's execution, the warrant itself "and the papers accompanying [it], including the affidavits, transcript or summary of any oral testimony, duplicate original search warrant, return and inventory, and any original tape or stenographic recording shall be confidential." R. 3:5-6(c).
Together, Rules 3:5-4 and 3:5-6(c) establish strong confidentiality protections for warrants and their supporting materials. The reason for warrant confidentiality is, in part, that warrants may describe ongoing investigations, active wiretaps, identities of confidential informants, identities of uncharged but implicated individuals, *800 and witnesses. See State in Interest of N.H., 226 N.J. 242, 256, 141 A.3d 1178 (2016) (explaining a protective order, in the **22 pretrial detention context, is used "to redact, delay, or withhold the disclosure of materials that would expose witnesses and others to harm, hinder or jeopardize ongoing investigations or prosecutions, undermine the secrecy of informants and confidential information which the law recognizes, or compromise some other legitimate interest"); R. 3:13-3(a)(1), (e)(1).
Despite those concerns for warrant confidentiality, Rule 3:5-6(c) provides two exceptions. First, "the warrant and accompanying papers shall be provided to the defendant in discovery pursuant to R. 3:13-3"; and second, the warrant and accompanying papers shall be "available for inspection and copying by any person claiming to be aggrieved by an unlawful search and seizure upon notice to the county prosecutor for good cause shown." R. 3:5-6(c).
The first of those exceptions is relevant here. That exception is tethered to Rule 3:13-3, which provides for the defendant's receipt of "open file" discovery upon indictment or in the event the prosecutor makes a pre-indictment plea offer. It is thus not until further along in the process that the confidentiality concerns protected by Rule 3:5-6(c) bow to discovery requirements, whereas the discovery provided for in Rule 3:4-2 is to be turned over pretrial. In order to read the pretrial discovery rule "in conjunction with Rule 3:13-3," therefore, we must determine whether the confidentiality interests described above militate against imposing the full-disclosure requirements of Rule 3:13-3 at the earlier proceeding governed by Rule 3:4-2(c).
IV.
A.
We first determine whether, as a matter of course, the State is required to produce the affidavit of probable cause supporting a search warrant before a pre-detention hearing under the CJRA. Applying the principles set forth in Robinson and considering the confidentiality concerns raised by search warrants, we decline to establish such a blanket rule.
**23 Discovery is limited by the nature of the pretrial detention hearing, at which the State need not prove guilt, but rather is required only to establish probable cause and to rebut the presumption of release. See N.J.S.A. 2A:162-19(e)(2). Defendants are entitled, in addition to "all exculpatory evidence and a copy of the charging document," to "statements or reports that relate to (1) the affidavit of probable cause and (2) additional evidence the prosecution relies on at the detention hearing-both to establish probable cause and to advance any relevant risk factors." Robinson, 229 N.J. at 76, 160 A.3d 1. Therefore, as to probable cause, the evidence to be produced is circumscribed by what the State chooses to include in its affidavit of probable cause or equivalent document and what it explicitly relies on during a detention hearing. See ibid. If, through the manner in which it frames its presentation, the State does not meet its burden of showing probable cause, the defendant must be released. Ibid.
Whether a search warrant affidavit is discoverable at a detention hearing, therefore, will turn on whether it relates to the affidavit of probable cause or the State's presentation on the risk factors in the specific case. For example, if an affidavit of probable cause alleged that defendant conducted a series of drug transactions, and the search warrant affidavit outlined those transactions, the State would have to disclose the warrant affidavit in connection with the detention hearing.
*801 On the other hand, if the affidavit of probable cause relied on items found during a search but not a defendant's prior history of drug dealing, the warrant affidavit would not have to be disclosed until the time of indictment.
The State may choose to include in its affidavit or discuss at the detention hearing only a portion of the evidence in its possession. In such circumstances, Rule 3:4-2(c) mandates only that the State produce discovery related to its presentation. That is true even if production of additional discovery would better describe the strength of the State's case.
**24 At the pretrial detention hearing, the court will consider the State's application to "determine probable cause-whether an officer has a 'well grounded suspicion that a crime has been' committed and that defendant committed the offense." Robinson, 229 N.J. at 68-69, 160 A.3d 1 (quoting State v. Gibson, 218 N.J. 277, 292, 95 A.3d 110 (2014) ). As we stressed in Robinson, that determination "calls for 'less evidence than is needed to convict at trial.' " Id. at 69, 160 A.3d 1 (quoting State v. Brown, 205 N.J. 133, 144, 14 A.3d 26 (2011) ). Nevertheless, when charged offenses include an element of possession, a showing of probable cause that defendant committed the offense requires the State to establish a nexus between the defendant and the contraband sufficient to support a well-grounded suspicion that the contraband was in defendant's possession within the meaning of the charged offenses.
Thus, at pretrial detention hearings, trial courts must determine whether the State has established a sufficient nexus between contraband and a defendant to support a finding of probable cause based on the State's presentation and the discovery it provides pursuant to Rule 3:4-2(c). Moreover, if "nexus" is rightly an issue, a defendant is free to challenge probable cause on that basis.
The ACLU argues that search warrant affidavits should be disclosed whenever the nexus between the defendant and the contraband is the basis "for pretrial detention and the location of the seizure alone is insufficient to show a nexus between the defendant and the contraband." We decline to adopt that approach. Rule 3:4-2(c) instead calls for disclosure of materials that relate to the State's presentation at the detention hearing. Thus, if the affidavit establishes the particular nexus between the defendant and the contraband found, the warrant should be disclosed. That will not be the case with all search warrant affidavits, however.
Judges, of course, have discretion to require production of additional discovery, including the search warrant affidavit, when **25 appropriate. State v. Ingram, 230 N.J. 190, 213, 165 A.3d 797 (2017). Thus, if the trial court concludes that additional related evidence is required to establish the nexus between a defendant and the contraband, the court may require production of additional discovery, including the search warrant affidavit. Cf. ibid. ("We find that the State is not obligated to call a live witness at each detention hearing. To be clear, though, we repeat that the trial court has discretion to require direct testimony if it is dissatisfied with the State's proffer. In those instances, the State must proceed reasonably promptly to avoid unduly prolonging a defendant's detention while the hearing is pending." (citation omitted) ).
In this way the trial court, not the State as is claimed by our dissenting colleague, "control[s] the information that flows through the discovery spigot." If the State is then unable or unwilling to produce the evidence needed to establish probable *802 cause, it will fail to carry its burden of proof, and the trial court must order release. See N.J.S.A. 2A:162-19(e)(2) ; Robinson, 229 N.J. at 58, 160 A.3d 1. In sum, we leave it to our trial courts to apply Rule 3:4-2(c) as clarified by this Court to resolve such disclosure issues.
Our approach is a natural application of existing principles of law. Going far back in time, judges have made probable cause determinations without either the judge or the defendant having the benefit of a search warrant affidavit in hand. Likewise, judges have made bail decisions that affected a defendant's liberty without a search warrant affidavit. Today, they are called upon to make both types of decisions-probable cause and detention-at the same time, with far more discovery than has been available previously at this early stage under state law, and far more than is available under comparable federal law. There is no basis under the CJRA or the Rules to go further and require disclosure of search warrant affidavits that do not relate to probable cause or detention-the only issues before the court. There will be ample time later to litigate the merits of the search warrant affidavit.
Our holding also allows courts to maintain the confidentiality of search warrants in many cases, in keeping with Rules 3:5-4 and **26 3:5-6(c), and will promote efficiency in pretrial proceedings. See ibid.; Robinson, 229 N.J. at 68, 160 A.3d 1. At the same time, that approach respects the evidentiary burdens established by the Legislature in the CJRA. See N.J.S.A. 2A:162-19(e)(2). We note that, to the extent a search warrant affidavit contains exculpatory information, its discovery is already explicitly required by Rule 3:4-2(c)(1)(B)(v). We stress that, if the circumstances of the case so warrant, the State may seek a protective order if the trial court requires discovery of a search warrant affidavit. See Robinson, 229 N.J. at 72, 160 A.3d 1 ; N.H., 226 N.J. at 256, 141 A.3d 1178.
This approach also recognizes that detention hearings differ from trials and suppression hearings. At the detention hearing, the court only determines probable cause and assesses the statutory risk factors. Challenges to the sufficiency of the search warrant affidavit and the admissibility of evidence come later in the judicial process, by which time the State will have been required to comply with its discovery obligation under Rule 3:13 and disclose any search warrant affidavits.
B.
Having determined that automatic disclosure of search warrant affidavits is not mandatory but that trial courts may require such disclosure, we consider whether disclosure was required in the present case.
As a part of discovery, the State provided, as required by Robinson, the PLEIR, the complaint, the supporting affidavit of probable cause, the PSA, and the incident and arrest reports, which were, in this case, commendably detailed. Further, unlike the "barebones affidavit" cautioned against in Robinson and criticized in Ingram, the affidavit of probable cause that the State provided stated in part: "Pursuant to the execution of a search warrant on 02/01/2017 the accused was arrested after being found to be in possession of suspected CDS, weapons, and contraband." Also, the State turned over the search warrant referenced in that **27 portion of the affidavit as required by Robinson. See 229 N.J. at 70, 160 A.3d 1.
The affidavit of probable cause did not refer to the search warrant affidavit, nor did the State rely on the search warrant affidavit at the detention hearing. The search warrant affidavit in this case simply *803 did not "relate to" the affidavit of probable cause. It is clear in this case that the evidence relied upon by the State was obtained when the search warrant was executed, not before.
Amicus ACLU asserts that that such production is required when the defendant is arrested in a place other than his home and that, here, there is no evidence of the defendant's control over contraband found at the time of arrest. Defendant claims that additional information was required to establish a nexus between him and the contraband. We disagree.
It is true that, "[w]here ... a defendant is one of several persons found on premises where [contraband is] discovered, it may not be inferred that he knew of the presence or had control of the [contraband] unless there are other circumstances ... tending to permit such an inference to be drawn." State v. Brown, 80 N.J. 587, 593, 404 A.2d 1111 (1979) (first ellipsis in original) (quoting State v. Sapp, 144 N.J. Super. 455, 461, 366 A.2d 335 (1975), rev'd on other grounds, 71 N.J. 476, 366 A.2d 334 (1976) ). In this case, such additional circumstances were present. First, defendant was in the area of the salon where drugs and guns were found. Second, officers found mail addressed to defendant at the salon, a State of New Jersey Certificate of Authority addressed to defendant, and an expired City of Asbury Park Barbershop/Salon License addressed to a Barbara Dickerson. It is clear that, unlike others present, defendant was not a customer. The State established a nexus sufficient to support probable cause here.
Because we find, first, that the affidavit supporting a search warrant disclosed in discovery need not be disclosed as a matter of course and, second, that no particular circumstances necessitated disclosure of that affidavit here, we reverse the Appellate Division's **28 affirmance of the trial court order that compelled production of that document.
V.
We turn now to the issue of the appropriate remedy for failure to comply with the discovery requirements set forth in Rule 3:4-2(c)(1)(B) and explained in greater detail here and in Robinson. Although there was no such failure here-inasmuch as it was not necessary to turn over the search warrant affidavit in this case-we offer the following guidance.
The issue of discovery sanctions must be distinguished, first and foremost, from a failure by the State to carry its burden as to probable cause or as to the need for detention. When the State fails to carry its burden in either of those areas, then the presumption of release under the CJRA carries the day. See N.J.S.A. 2A:162-15, -19. When the State withholds requisite discovery, there are sanctions available under our court rules to penalize gamesmanship. See R. 3:13-3(f).
Such sanctions cannot include release of a defendant. Only the failure of the State to establish probable cause or to overcome the presumption of release justifies release. N.J.S.A. 2A:162-19(e)(2). Detention is required under the CJRA when necessary to protect the public, prevent obstruction, or ensure a defendant's appearance. N.J.S.A. 2A:162-18(a)(1). The court must not eschew those interests to punish what it perceives to be bad conduct. The public cannot be imperiled, nor the integrity of the judicial system compromised, due to a failure to comply with a discovery order. Thus, to the extent that the trial court's order of release served as a "sanction" for the State's failure to meet what the court viewed to be the State's *804 discovery requirements, that release order was improper.
As to whether any sanction was warranted, we note that there is no allegation that the State was guilty of any misbehavior. Indeed, the question of whether the search warrant affidavit was **29 related to the issues of probable cause or detention was substantial and genuine. There was no inappropriate conduct here-only an honest legal dispute as to the discovery requirements of Rule 3:4-2(c). We therefore find that no sanction was warranted and that the pretrial detention hearing should have been allowed to proceed as scheduled while interlocutory review of the legal dispute was pursued. We accordingly affirm the Appellate Division's determination to remand to the trial court for a detention hearing.
VI.
For the reasons set forth above, we reverse the judgment of the Appellate Division requiring the State to produce the affidavit in support of the search warrant issued here in pre-detention hearing discovery. We affirm the judgment of the Appellate Division remanding the matter to the trial court to conduct a detention hearing.
CHIEF JUSTICE RABNER and JUSTICES PATTERSON, FERNANDEZ-VINA, and TIMPONE join in JUSTICE SOLOMON's opinion. JUSTICE ALBIN filed a separate, dissenting opinion, in which JUSTICE LaVECCHIA joins.

The PLEIR "is 'an electronic document that succinctly describes the relevant factual circumstances' relating to a defendant's arrest." State v. Robinson, 229 N.J. 44, 61, 160 A.3d 1 (2017) (quoting Office of the Attorney General, Directive Establishing Interim Policies, Practices and Procedures to Implement Criminal Justice Reform Pursuant to P.L. 2014, c. 31 § 5.2, at 48 (Oct. 11, 2016) ).

We do not consider the arguments raised by the State or the other parties inferencing an unpublished Appellate Division decision reversing a trial court's order compelling discovery of a search warrant affidavit. That unpublished decision does not fall within the narrow exceptions set forth in Rule 1:36-3.

The factors the State may advance are applicable to show that no amount of monetary bail, non-monetary conditions of pretrial release, or combination of monetary bail and conditions would reasonably assure 1) defendant's appearance in court when required, 2) the protection of the safety of any other person or the community, and 3) that defendant will not obstruct or attempt to obstruct the criminal justice process. N.J.S.A. 2A:162-18(a)(1).