**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3623-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

QUASHAWN JONES, a/k/a
QUASHAWN K. JONES,

    Defendant-Appellant.

_____

Submitted November 6, 2024 – Decided February 25, 2025

Before Judges Gooden Brown and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 14-11-3279.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Susan Brody, Designated Counsel, on the brief).

William E. Reynolds, Atlantic County Prosecutor, attorney for respondent (Kristen Pulkstenis, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Quashawn Jones appeals from a June 8, 2023, Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

Following a jury trial, defendant was convicted of two counts of attempted murder, multiple counts of aggravated assault, witness tampering, and related weapons-possession offenses. He was sentenced as a persistent offender, N.J.S.A. 2C:44-3(a), to an aggregate term of sixty-five years' imprisonment, fifty of which were subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The convictions stemmed from defendant shooting the victim multiple times, including while she laid motionless on the floor of her friend's apartment. Defendant's actions were prompted by his unfounded belief that the victim and her two friends were setting him up to be robbed or killed. The victim survived her life threatening injuries and later testified at defendant's trial.

While defendant was incarcerated awaiting trial, he expressed outrage that the victim was still alive in recorded phone conversations that were played for the jury. In the conversations, defendant stated that he wanted the victim dead to prevent her from testifying and directed his girlfriend and cousin to contact

people to kill the victim or bail him out so that he could kill the victim himself. Both attempted murder counts with which defendant was charged pertained to the same victim, but one count was predicated on the shootings while the other was predicated on the recorded phone conversations soliciting the victim's murder.

In an unpublished opinion, we reversed the latter attempted murder conviction "because the State failed to establish a substantial step." State v. Jones, No. A-0215-15 (App. Div. Sept. 10, 2018) (slip op. at 4). We explained that the recorded phone conversations fell "short of the substantial step required for attempt under N.J.S.A. 2C:5-1(a)(3)." Id. at 32. As such, we concluded the trial court should have granted defendant's motion for judgment of acquittal on that count. Id. at 4. We affirmed the remaining convictions and "remand[ed] for re-sentencing based upon our reversal." Ibid. Because we remanded for resentencing, we did "not address defendant's challenge to his sentence." Id. at 32.

Our Supreme Court reversed and reinstated defendant's conviction and sentence on the attempted murder charge. State v. Jones, 242 N.J. 156, 160 (2020). The Court reasoned:

> Although the facts lie at the outer edges of what is sufficient to show a substantial step based on verbal

acts, when defendant's statements on the recorded conversations are considered in the context of this case, we conclude that the State presented sufficient evidence for the jury to find a substantial step for attempted murder.

[Id. at 160-61.]

The Court did not further address defendant's sentence. Ibid.

Defendant filed a timely PCR petition and was assigned counsel. In his petition, defendant raised various ineffective assistance of counsel (IAC) claims. Pertinent to this appeal, defendant asserted counsel "fail[ed] to preserve and argue [his] sentencing issues on direct appeal." Defendant also argued trial counsel failed to object to the State's "prejudicial remarks" during summation.

Following oral argument, the PCR judge rejected defendant's petition in its entirety in an order entered on June 8, 2023. As to defendant's sentencing argument, in an accompanying written opinion, the judge found defendant

already received an opportunity to be resentenced by way of the Appellate Division's remand. The resentencing was reversed by the New Jersey Supreme Court on May 13, 2020[,] based on a finding that the jury could find at trial[.] As such, the issue of resentencing has already been adjudicated and[,] pursuant to R[ule] 3:22-5, is not an issue that may be raised in a PCR [petition].

As to the merits, the judge also found that defendant failed to establish a prima facie claim of IAC. The judge explained that because "[t]he Appellate

4                                                    A-3623-22

Division's decision did not dismiss the sentencing issues," the issues "were brought but not adjudicated" through "no fault of trial nor appellate counsel." As such, "counsel acted appropriately and [defendant] has not made a showing of deficient performance by counsel so serious that counsel was not functioning as the counsel that is guaranteed by the Sixth Amendment." Further, according to the judge, defendant "has not shown that there exists a reasonable probability that, but-for counsel's unprofessional errors, the result of the proceeding would have been different."

For the same reason, the judge rejected defendant's IAC claim based on the prosecutor's comments during summation. At the outset, the judge pointed out that defendant "did not support []his argument with any specific examples or information." Nonetheless, the judge noted that in our unpublished opinion, we determined that "the manner in which the prosecutor expressed disbelief in the defense case was 'reasonably related to the scope of the evidence presented' . . . and did not exceed the bounds of propriety." (quoting Jones, slip op. at 23-24). As such, the judge concluded that "[t]he statements made by the State in closing argument . . . [did] not rise to the level of objectionability such that trial counsel's failure to object constitute[d] deficient performance to support a claim for [IAC]," nor did they "impact[] the outcome of the trial."

5

The judge explained:

> Though the State's statements as to . . . [defendant] having a "stupid plan" and being "self-centered" and "selfish" do not paint . . . [defendant] in a favorable light, the State may use emotionally heightened language in summation, so long as the statements do not infringe upon constitutionally protected rights. These statements, though negative towards . . . [defendant], do not infringe upon any such rights. The statements are also not wholly unsubstantiated by the record, as they pertain to phone calls made by . . . defendant that were produced at trial.

The judge denied PCR without an evidentiary hearing and this appeal followed.

On appeal, defendant raises the following points for our consideration:

POINT I

THIS COURT MUST ADDRESS THE SENTENCING ISSUES THAT WERE RAISED [PREVIOUSLY] BUT WERE NOT ADDRESSED BY EITHER THIS COURT OR THE SUPREME COURT.

POINT II

THE [PCR COURT] ERRED IN FINDING THAT [DEFENDANT] WAS NOT ENTITLED TO AN EVIDENTIARY HEARING TO DETERMINE WHETHER TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO THE PROSECUTOR'S IMPROPER REMARKS IN SUMMATION.

II.

We begin by setting out guideposts that inform our review. "We review

the legal conclusions of a PCR judge de novo," State v. Reevey, 417 N.J. Super. 134, 146 (App. Div. 2010), but "review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing," State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013). "[W]here . . . no evidentiary hearing was conducted," as here, "we may review the factual inferences the [trial] court has drawn from the documentary record de novo." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016) (citing State v. Harris, 181 N.J. 391, 421 (2004)).

An evidentiary hearing is only required when (1) a defendant establishes "a prima facie case in support of [PCR]," (2) the court determines that there are "material issues of disputed fact that cannot be resolved by reference to the existing record," and (3) the court determines that "an evidentiary hearing is necessary to resolve the claims" asserted. State v. Porter, 216 N.J. 343, 354 (2013) (alteration in original) (quoting R. 3:22-10(b)); see also R. 3:22-10(e)(2) (providing "[a] court shall not grant an evidentiary hearing . . . if the defendant's allegations are too vague, conclusory or speculative"). Indeed, "[i]f the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to post-conviction relief, . . . then an evidentiary hearing need not be granted." Brewster, 429 N.J. Super. at 401

7

(omission in original) (quoting State v. Marshall, 148 N.J. 89, 158 (1997)).

"To establish a prima facie case, [a] defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits." R. 3:22-10(b). Moreover, a defendant must make this showing "by a preponderance of the credible evidence." State v. Goodwin, 173 N.J. 583, 593 (2002). "Rule 3:22-2 provides four grounds for post-conviction relief: (a) 'substantial denial in the conviction proceedings' of a defendant's state or federal constitutional rights; (b) a sentencing court's lack of jurisdiction; (c) an unlawful sentence; and (d) any habeas corpus, common-law, or statutory grounds for a collateral attack." State v. Preciose, 129 N.J. 451, 459 (1992) (quoting R. 3:22-2).

To establish a prima facie claim of the substantial denial of the constitutional right to effective assistance of counsel as contemplated under subsection (a), a defendant must demonstrate that the performance of counsel fell below the objective standard of reasonableness set forth in Strickland v. Washington, 466 U.S. 668, 687-88 (1984), and adopted in State v. Fritz, 105 N.J. 42, 49-58 (1987), and that the outcome would have been different without the purported deficient performance. Stated differently, a defendant must show that: (1) counsel's performance was deficient; and (2) the deficient performance

prejudiced the defense. Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58.

To satisfy the first prong, a defendant must "show[] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and "that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. "[I]n making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Id. at 689. As such, a defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

To satisfy the second prong, "[t]he error committed must be so serious as to undermine the court's confidence in the jury's verdict or result reached." State v. Chew, 179 N.J. 186, 204 (2004) (citing Strickland, 466 U.S. at 694). This prong generally requires that a defendant establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Failure to meet either prong of the two-pronged Strickland/Fritz test results in the denial of a petition for PCR. State v. Parker, 212 N.J. 269, 280

9

(2012) (citing State v. Echols, 199 N.J. 344, 358 (2009)). That said, "courts are permitted leeway to choose to examine first whether a defendant has been prejudiced, and if not, to dismiss the claim without determining whether counsel's performance was constitutionally deficient." State v. Gaitan, 209 N.J. 339, 350 (2012) (citation omitted) (citing Strickland, 466 U.S. at 697).

A defendant seeking PCR must also overcome procedural hurdles.

> "Because post-conviction relief is not a substitute for direct appeal and because of the public policy 'to promote finality in judicial proceedings,' our rules provide various procedural bars." Echols, 199 N.J. at 357 (citations omitted) (quoting State v. McQuaid, 147 N.J. 464, 483 (1997)).
>
> "[A] petitioner may be barred from relief if the petitioner could have raised the issue on direct appeal but failed to do so, Rule 3:22-4[, or] the issue was previously decided on direct appeal, Rule 3:22-5[.]" Echols, 199 N.J. at 357.
>
> [State v. Peoples, 446 N.J. Super. 245, 254 (App. Div. 2016) (alterations in original) (citations reformatted).]

But "[p]reclusion of consideration of an argument presented in [PCR] proceedings should be effected only if the issue raised is identical or substantially equivalent to that issue previously adjudicated on its merits." McQuaid, 147 N.J at 484 (quoting State v. Bontempo, 170 N.J. Super. 220, 234 (Law Div. 1979)).

On direct appeal, we reversed the attempted murder charge premised on the recorded phone calls, vacated the sentence on that charge, remanded the case to the trial court for resentencing, and did not reach the merits of defendant's sentencing argument. Jones, slip op. at 32. In reversing our decision, the Supreme Court did not consider the merits of defendant's sentencing argument, directing instead that defendant's original sentence be reinstated. Jones, 242 N.J. at 179. Because we agree defendant's sentencing argument was never addressed on the merits by this court or the Supreme Court, we consider it now.

The principles that guide our review of a sentence are well settled. We review sentences "in accordance with a deferential standard," State v. Fuentes, 217 N.J. 57, 70 (2014), and are mindful that we "should not 'substitute [our] judgment for those of our sentencing courts,'" State v. Cuff, 239 N.J. 321, 347 (2019) (quoting State v. Case, 220 N.J. 49, 65 (2014)). Thus, we will

> affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Fuentes, 217 N.J. at 70 (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

11

In <u>State v. Yarbough</u>, 100 N.J. 627, 643-44 (1985), our Supreme Court set forth guidelines for evaluating the threshold question of whether to impose concurrent or consecutive sentences pursuant to N.J.S.A. 2C:44-5(a). The <u>Yarbough</u> Court enumerated five specific facts sentencing courts should consider, including whether or not:

> (a) the crimes and their objectives were predominantly independent of each other;
>
> (b) the crimes involved separate acts of violence or threats of violence;
>
> (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;
>
> (d) any of the crimes involved multiple victims;
>
> (e) the convictions for which the sentences are to be imposed are numerous[.]
>
> [<u>Yarbough</u>, 100 N.J. at 644.]

"The <u>Yarbough</u> factors serve much the same purpose that aggravating and mitigating factors do in guiding the court toward a sentence within the statutory range," <u>State v. Abdullah</u>, 184 N.J. 497, 514 (2005), and "should be applied qualitatively, not quantitatively." <u>State v. Carey</u>, 168 N.J. 413, 427 (2001). <u>See also</u> <u>State v. Molina</u>, 168 N.J. 436, 442 (2001) (affirming consecutive sentences

although "the only factor that support[ed] consecutive sentences [was] the presence of multiple victims").

Here, in imposing sentence, the judge found aggravating factors two, three, six, and nine based on the vulnerability of the victim after the first shot, defendant's high risk of re-offense, the extent of defendant's prior criminal record, and the compelling need for deterrence, respectively. See N.J.S.A. 2C:44-1(a)(2), (3), (6), (9). The judge found mitigating factor eleven based on the hardship defendant's incarceration posed to his two children. See N.J.S.A. 2C:44-1(b)(11). The judge found the aggravating factors outweighed the sole mitigating factor, justifying a sentence toward the top of the sentencing range. See Fuentes, 217 N.J. at 73 ("[R]eason suggests that when the mitigating factors preponderate, sentences will tend toward the lower end of the range, and when the aggravating factors preponderate, sentences will tend toward the higher end of the range." (quoting State v. Natale, 184 N.J. 458, 488 (2005))). Applying the Yarbough factors, the judge also determined that consecutive sentences were warranted, explaining that although there was one victim, "[t]he crimes were

predominantly independent of each other, [and] separate acts of wrongdoing were committed at different times and in different places."[1]

We discern no abuse of discretion in the judge's sentencing decision, which is amply supported by credible evidence in the record, complies with the sentencing guidelines, and does not shock the judicial conscience. Defendant argues the judge "relied on improper considerations" by relying too heavily on "a need for general deterrence" stemming from "a general culture of lawlessness that had existed for years in Atlantic City." To apply aggravating factor nine, a court must find a "need for deterring the defendant and others from violating the law." N.J.S.A. 2C:44-1(a)(9). "Deterrence has been repeatedly identified in all facets of the criminal justice system as one of the most important factors in sentencing." State v. Megargel, 143 N.J. 484, 501 (1996). Based on the judge's consideration of the applicable factors, including the extent of defendant's prior

---

[1] Defendant does not challenge the judge's ruling that he qualified for an extended term sentence under the persistent offender statute. See N.J.S.A. 2C:44-3(a). After mergers, the judge sentenced defendant to an extended term of thirty-five years' imprisonment, subject to NERA, on the attempted murder charge premised on the shootings; a consecutive five-year term of imprisonment on the witness tampering charge; a consecutive fifteen-year term of imprisonment, subject to NERA, on the attempted murder charge premised on the recorded phone calls; and a consecutive ten-year term of imprisonment, with a five-year period of parole ineligibility, on the certain persons charge. Jones, slip op. at 11.

14

criminal history[2] and the circumstances of the shooting as well as its aftermath, the determination that there was a compelling need for both specific and general deterrence for the protection of society was clearly supported by the record and we discern no basis to disturb the judge's finding. See State v. Pennington, 154 N.J. 344, 354-55 (1998) ("Serious, harmful and calculated offenses typically call for deterrence." (quoting State v. Dunbar, 108 N.J. 80, 91 (1987))).

Defendant also argues the judge imposed a lengthy sentence "as a means of expressing his outrage that [defendant] had chosen to proceed to trial and had considered asserting a mental health defense." His argument is belied by the record. In discussing defendant's invocation of a mental health defense, the judge recounted the events immediately following the shooting, including defendant's attempt to portray himself to the police as a victim, rather than the perpetrator. This conduct illustrated to the judge that defendant was "manipulative, violent, [and] streetwise," a finding the record overwhelmingly supports.

We likewise reject defendant's contention that in imposing a lengthy sentence, the judge improperly considered defendant's rejection of a plea offer.

---

[2] The judge recounted that defendant had "nine prior convictions, five of which were indictable," and for which defendant had "been on probation and [had] been to state prison."

A-3623-22

It is axiomatic that "[a] plea of guilty by a defendant or failure to so plead shall not be considered in withholding or imposing a sentence of imprisonment." N.J.S.A. 2C:44-1(c)(1); Pennington, 154 N.J. at 363 ("[T]here can be neither punishment nor benefit derived from a rejected negotiated disposition."). The record clearly shows that the judge did not impose a lengthy sentence as punishment for defendant's rejection of the plea offer and decision to proceed to trial. Instead, during sentencing, the judge noted that even after defendant was confronted with the recorded jail calls, "he still rejected . . . a reasonable plea offer . . . and instead chose to go to trial, which was his constitutional right to do." The judge remarked that "[a]s a result of this trial defendant was found guilty of" nearly all the charges, presumably in stark contrast to the outcome had he accepted the plea offer. We are satisfied the judge did not inappropriately consider defendant's rejection of the plea offer as a factor in imposing sentence.

We turn now to defendant's IAC claim. He maintains his trial attorney was ineffective for not objecting to the prosecutor's "many improper comments" during summation. We rejected a substantially similar argument in his direct appeal in connection with the prosecutor's response to defense counsel's comments. Defense counsel commented during summations that defendant may be found guilty of attempted passion/provocation manslaughter, but not

attempted murder, and may have acted in self-defense or imperfect self-defense.[3]

The prosecutor responded:

> And I was sitting here and I hear about self-defense, suggesting that this is self-defense. In what world is what happened to [the victim] self-defense? An honest belief he needed to protect himself when shooting her three times, was it the first shot when she was lying on the ground that he was acting in self-defense, was it the second shot when she was lying on the ground that he acted in self-defense, or was it that third shot when he fired at [the victim] that he was acting in self-defense, hedging his bet because it's so obvious he's the shooter, hey, this honest but unreasonable belief that I could shoot her. How could you say there's an honest belief to shoot somebody on the floor? Passion/provocation, another hedging of the bet because it's so clear that he's the shooter in this case and we're going to talk about that stuff that something happened in that house that aroused his passion to lose self[-]control and what he did by losing self[-]control is a reasonable reaction to the circumstances.
>
> [Jones, slip op. at 23.]

In rejecting defendant's invocation of plain error based on the comment, we explained:

> "Prosecutors can sum up cases with force and vigor, and are afforded considerable leeway so long as their comments are 'reasonably related to the scope of the evidence presented.'" State v. Pressley, 232 N.J.

---

[3] The jury was instructed on both defenses.

587, 593 (2018) (quoting State v. Timmendequas, 161 N.J. 515, 587 (1999), cert. denied, 534 U.S. 858 (2001)). "A prosecutor may respond to defense claims, even if the response tends to undermine the defense case." State v. Nelson, 173 N.J. 417, 473 (2002). We are satisfied that the manner in which the prosecutor expressed disbelief in the defense case did not exceed the bounds of propriety, particularly since the assessment was "reasonably related to the scope of the evidence presented." State v. Frost, 158 N.J. 76, 82 (1999).

[Jones, slip op. at 23-24 (citations reformatted).]

Defendant now argues that defense counsel's failure to object to these remarks by the prosecutor as well as other remarks amounted to IAC. However, given our determination that there was no plain error, we are satisfied that at a minimum, the claim does not satisfy the prejudice prong of the Strickland/Fritz test. Regarding the other remarks, defendant asserts the prosecutor "improperly disparaged the defense" by, among other things, referring to him as "a salesman" and referring to his plan as "stupid." In addition, defendant contends the prosecutor improperly "bolstered the testimony of the victim" by "laud[ing her] for her courage" and "contrast[ing]" her "character" with defendant's. He claims "[t]he cumulative impact of all of the comments was substantial" and had defense counsel "voice[d] appropriate objections," they may have been stricken and the jury might have reached a different result.

18

We disagree. We are satisfied defendant has not demonstrated prejudice sufficient to satisfy the prejudice prong of the <u>Strickland</u>/<u>Fritz</u> test. To rule otherwise would overlook the overwhelming evidence of defendant's guilt, including the victim's vivid eyewitness account and defendant's own statements soliciting her murder to prevent her from testifying as captured in the recorded phone calls. In assessing the prejudice prong, "the court must consider the quantum and quality of evidence" and be mindful that "'a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" <u>Marshall</u>, 148 N.J. at 157 (quoting <u>Strickland</u>, 466 U.S. at 696). Because there was overwhelming record support for defendant's convictions, any errors in the prosecutor's summation did not affect the outcome.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3623-22