NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2850-19T6

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

ANTOINE WILLIAMS and
DANIQUE SIMPSON,

    Defendants-Respondents.

_____

> **APPROVED FOR PUBLICATION**
>
> **July 7, 2020**
>
> **APPELLATE DIVISION**

Argued telephonically June 2, 2020 –
Decided July 7, 2020

Before Judges Fisher, Accurso and Gilson.

On appeal from interlocutory orders of the Superior
Court of New Jersey, Law Division, Middlesex County,
Indictment Nos. 18-02-0353, 18-02-0354, 18-06-0923,
18-02-0346, 18-02-0352, and 19-04-0700.

David Michael Liston, Special Deputy Attorney
General/Acting Assistant Prosecutor argued the cause
for appellant (Christopher L.C. Kuberiet, Acting
Middlesex County Prosecutor, attorney; David Michael
Liston, on the brief).

Joseph M. Mazraani argued the cause for respondent
Antoine Williams (Mazraani & Liguori, LLP, attorneys
Joseph M. Mazraani and Jeffrey S. Farmer, of counsel
and on the brief).

Roger A. Serruto argued the cause for respondent Danique Simpson (The Serruto Law Firm, PC, attorneys; Roger A. Serruto, of counsel and on the brief).

The opinion of the court was delivered by

GILSON, J.A.D.

The Criminal Justice Reform Act (CJRA), N.J.S.A. 2A:162-15 to -26, strikes a careful balance. It authorizes the pretrial detention of persons charged with serious crimes who pose a risk of flight, danger, or obstruction that cannot be offset by conditions. It also guarantees such detained persons the right to a speedy trial. This appeal presents a question whether the trial court properly exercised its discretion in balancing the risk to the community and the State's failure to proceed to trial within the time limits imposed by the CJRA.

On leave granted, the State appeals from two orders allowing the pretrial release of defendants Antoine Williams and Danique Simpson three years after they were first detained in December 2017. The trial court ordered their release due to the lapse of the 180-day and two-year speedy trial deadlines under the CJRA. Although the court found that both defendants still posed a substantial risk to the community, it also found that the failure to commence the trial was due to unreasonable delays caused by the State. After a careful review of the

record, we discern no abuse of discretion. Accordingly, we hold that the trial court struck an appropriate balance and affirm.

I.

In December 2017, Williams and Simpson were charged with numerous violent crimes allegedly arising out of gang-related activities. The charges against defendants included attempted murder, armed robbery, and related weapons offenses.

On December 15, 2017, following a hearing, the trial court granted the State's application to detain both defendants in accordance with the CJRA. The 2017 Public Safety Assessment (PSA) of Williams assessed him as posing a risk of three on a scale of six for failure to appear and a risk of four on a scale of six for new criminal activity. The PSA also identified Williams as a person with an elevated risk of committing a violent crime and recommended against his release pretrial. The trial court reviewed the nature of the alleged crimes and Williams' background, character, and criminal history and noted that he was on parole for a prior conviction of second-degree manslaughter when he allegedly committed new crimes in 2017. The court also noted that Williams had previously been convicted of second-degree unlawful possession of a handgun. Consequently, the trial court found clear and convincing evidence that no amount of monetary

A-2850-19T6

bail or conditions would reasonably assure the protection of the community and ordered Williams detained pretrial.

The 2017 PSA of Simpson assessed him of posing a risk of two on a scale of six for failure to appear and a risk of three on a scale of six for new criminal activity. The PSA also identified Simpson as a person with an elevated risk of committing a violent crime and recommended against his release pretrial. The trial court reviewed the nature of the alleged crimes and Simpson's background, character, and criminal history and noted that he had previously been convicted of first-degree robbery. Accordingly, the court found clear and convincing evidence that no amount of monetary bail or conditions would reasonably assure the protection of the community and ordered Simpson detained pretrial.

In February 2018, Williams and Simpson were separately indicted for numerous crimes.[1] Other indictments were also issued against five other defendants charging them with various gang-related crimes. Williams was charged with first-degree conspiracy to commit murder, N.J.S.A. 2C:11-3(a)(1) and N.J.S.A. 2C:5-2; three counts of first-degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3(a)(1); second-degree unlawful possession of a

---

[1] Thereafter, additional indictments were also issued against Williams and the State obtained a superseding indictment against Simpson.

weapon, N.J.S.A. 2C:39-5(b); and three counts of second-degree possession of a weapon for unlawful purposes, N.J.S.A. 2C:39-4(a)(1) and (a)(2). While in a holding cell awaiting a court hearing, Williams allegedly assaulted another inmate and on June 15, 2018, was charged with one count of third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7).

Simpson was charged in several indictments with first-degree conspiracy to commit armed robbery, N.J.S.A. 2C:15-1 and N.J.S.A. 2C:5-2; first-degree armed robbery, N.J.S.A. 2C:15-1; second-degree possession of a weapon for unlawful purposes, N.J.S.A. 2C:39-4(a); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); first-degree conspiracy to commit robbery, N.J.S.A. 2C:15-1(a)(1) and N.J.S.A. 2C:5-2; first-degree armed robbery, N.J.S.A. 2C:15-1; first-degree attempted murder, N.J.S.A. 2C:11-3(a)(1) and numerous other weapons-related offenses.

The charges against Williams and Simpson arose out of an investigation conducted by the New Brunswick Police Department.[2] In August 2017, the police came to believe that two groups were in conflict over drug dealing and, as part of the conflict, Anthony Pinson was seeking to kill Shane Shephard. The

---

[2] We discern the facts from a summary set forth in the trial court's opinion issued on February 26, 2019. The State accepted those facts as accurate for purposes of this appeal.

5

ensuing investigation led to the arrest of and criminal charges against seven defendants: Williams, Simpson, Pinson, Darnell Konteh, Ashley Stewart, Shaheed Wroten, and Paul Sexton. Sexton later cooperated with the police and gave statements implicating the other defendants in several shootings and two armed robberies.

On September 7, 2017, the police received information that Shephard had been fighting with someone and that shots had been fired. The police responded, found no one in the area, but recovered spent shell casings. They also obtained a video from a surveillance camera that showed two men walking in the area. The video depicted one man bending down and the other man firing a gun at a car as it pulled away. Sexton told the police that he and Pinson had gone to that area to kill Shephard, and that Pinson had fired shots at the car believing it was Shephard's vehicle.

On September 10, 2017, a BP gas station was robbed by two armed men. Sexton told the police that Simpson and Pinson were the robbers.

On September 19, 2017, three victims were shot. Sexton told the police that Williams and Pinson had gone looking for Shephard, but when they could not find him, they shot the three victims.

On October 15, 2017, a gas station employee was shot during an armed robbery. Sexton told the police that he drove Simpson, Pinson, and Wroten to the gas station in a stolen vehicle. Stewart followed in a separate car to act as lookout. According to Sexton, Pinson shot the employee.

Following the issuance of the indictments, the parties engaged in discovery and motion practice. Certain defendants moved to suppress evidence and the State moved to join the indictments. The trial court granted defendants' motion to suppress. We reversed, State v. Pinson, 461 N.J. Super. 536 (App. Div. 2019), but on May 5, 2020, the Supreme Court summarily remanded and directed the trial court to conduct a Franks hearing.[3] State v. Pinson, __ N.J. __ (2020).

The trial court also denied the State's motion to join the eight indictments. Given that Sexton was a key witness for the State against all the defendants, the trial court ordered the State to produce to all defendants the discovery related to the other defendants.

---

[3] Franks v. Delaware, 438 U.S. 154 (1978). In Franks, the Supreme Court held that where a defendant makes a substantial preliminary showing that a knowing and false statement was included in an affidavit filed in support of an application for a warrant, defendant is entitled to a hearing to determine the sufficiency of the probable cause supporting the warrant. Id. at 155.

Beginning in April 2018, and repeatedly thereafter, Williams requested a trial date. In December 2019, the State moved to extend the pretrial detention of Williams and Simpson. At that time, Williams was scheduled to go to trial on January 31, 2020, but no date had been set for Simpson's trial. The trial court found that the speedy trial deadlines for both Williams and Simpson had expired months before December 2019.[4] Nevertheless, the trial court granted the State's application to continue the detentions of Williams and Simpson finding that both still posed a danger to the community if released and the failure to commence trial was not due to unreasonable delays by the State. Accordingly, on December 11, 2019, the court entered orders continuing defendants' pretrial detention.

Thereafter, in January and February 2020, the trial court addressed a series of motions filed by defendants in which defendants contended that the State had unduly delayed providing them with material discovery. On January 15, 2020,

---

[4] On leave granted, defendants appealed from the trial court's order establishing excludable time for the various motions. On December 2, 2019, we reversed the trial court's order calculating the excludable time and remanded for entry of an order fixing excludable time in accordance with our opinion. State v. Williams, 461 N.J. Super. 531 (App. Div. 2019). On remand, the trial court found that the speedy trial time for Williams had expired on April 9, 2019. We were not provided with the order concerning Simpson, but we presume that it set an expiration of the speedy trial time in the similar time frame of April 2019. Without regard to the actual date, on this appeal the State does not dispute that the speedy trial time for both Williams and Simpson has expired.

A-2850-19T6

the court entered an order barring the State from using discovery it had obtained in May and July 2019, but first produced to defendants in December 2019. Less than three weeks later, on February 5, 2020, the trial court barred Sexton from testifying at trial against any of the defendants. The court found that the State had unduly delayed investigating an alibi defense asserted by defendant Wroten in April 2019. The State formally interviewed Sexton concerning that alibi on January 30, 2020. During that recorded interview, Sexton admitted that he lied about Wroten and that he, not Wroten, had committed the crime Sexton had previously claimed Wroten committed. Finding that such an admission went to Sexton's credibility, and that Sexton was a key witness against all the defendants, the trial court barred Sexton from testifying at trial. The State moved for leave to appeal from the order barring Sexton's testimony. We granted leave and stayed the trial.

On February 25, 2020, the trial court heard arguments on the State's motion to continue Williams' pretrial detention and Simpson's motion to terminate his pretrial detention. Several days later, on March 2, 2020, the trial court denied the State's motion, granted Simpson's motion, and entered two orders releasing both defendants. The orders set strict conditions and provided for their release on Level III (the highest level) pretrial monitoring.

The court explained the reasons for its ruling both on the record and in detailed orders dated March 2, 2020. The trial court first found that Williams and Simpson were no less of a substantial or unjustifiable risk to the community than they had been when their detentions were continued in December 2019. The trial court also found, however, that the State's repeated failure to comply with the trial court's discovery orders and the State's delay in producing material discovery – which the trial court addressed in January and February 2020 – caused both defendants' speedy trial deadlines to expire as a result of unreasonable delays by the State.

The State notified the trial court that it intended to seek leave to appeal and, accordingly, the trial court stayed defendants' release pending that application. We granted the State's motion for leave to appeal and consolidated the appeals.

As previously noted, while this appeal was pending, our Supreme Court granted defendants' motion for leave to appeal our decision in Pinson, 461 N.J. Super. 536 and summarily remanded the suppression issue to the trial court to conduct a Franks hearing. As a result, we dismissed the State's appeal of the order barring Sexton's testimony, vacated the stay of defendants' trials, and

10

remanded the matter to the trial court for further proceedings. State v. Pinson, No. A-2421-19 (App. Div. May 22, 2020).

The issue before us is whether the trial court abused its discretion in its March 2, 2020 orders releasing Williams and Simpson from pretrial detention.

II.

The CJRA establishes speedy trial deadlines governing how long a defendant can be detained before he or she is indicted and tried. N.J.S.A. 2A:162-22; see also R. 3:25-4. A defendant cannot be detained for more than ninety days before the return of an indictment, or more than 180 days after indictment and the start of trial. N.J.S.A. 2A:162-22(a)(1)(a), (2)(a). Both those time periods are subject to "excludable time for reasonable delays" and the CJRA lists thirteen types of excludable time. N.J.S.A. 2A:162-22(b); see also R. 3:25-4(i). The CJRA also sets an outer limit of two years for pretrial detention for a single indictment, not counting any delays attributable to defendant. N.J.S.A. 2A:162-22(a)(2)(a), (a)(2)(c).

If trial has not commenced by the 180-day deadline, a defendant "shall be released" unless the court finds (1) defendant's release would pose a "substantial and unjustifiable risk" to the safety of a person or the community; and (2) the failure to commence trial was not due to unreasonable delays by the prosecutor.

11

N.J.S.A. 2A:162-22(a)(2)(a). If trial has not commenced by the two-year outer limit, then defendant "shall be released" if the prosecutor is not ready to proceed to trial. Ibid. Finally, if defendant is released, the court can set conditions on defendant's pretrial release. Ibid.; see also R. 3:25-4.

Applicable here is N.J.S.A. 2A:162-22(a)(2)(a), which provides in relevant part:

> An eligible defendant who has been indicted shall not remain detained in jail for more than 180 days on that charge following the return or unsealing of the indictment, whichever is later, not counting excludable time for reasonable delays as set forth in subsection [(b)] of this section, before commencement of the trial. If the trial does not commence within that period of time, the eligible defendant shall be released from jail unless, on motion of the prosecutor, the court finds that a substantial and unjustifiable risk to the safety of any other person or the community or the obstruction of the criminal justice process would result from the eligible defendant's release from custody, so that no appropriate conditions for the eligible defendant's release could reasonably address that risk, and also finds that failure to commence trial in accordance with the time requirements set forth in this subparagraph was not due to unreasonable delay by the prosecutor . . . . Notwithstanding any other provision of this section, an eligible defendant shall be released . . . after a release hearing if, two years after the court's issuance of the pretrial detention order for the eligible defendant, excluding any delays attributable to the eligible defendant, the prosecutor is not ready to proceed to voir dire or to opening argument, or to the hearing of any motions that had been reserved for the time of trial.

Appellate courts review a trial court's decisions concerning pretrial detention for abuse of discretion.  State v. S.N., 231 N.J. 497, 515 (2018); State v. Forchion, 451 N.J. Super. 474, 482 (App. Div. 2017).  An abuse of discretion exists when a decision fails to consider the relevant factors, or considers impermissible, irrelevant or inappropriate factors, or reflects a clear error of judgment.  S.N., 231 N.J. at 515 (citing State v. C.W., 449 N.J. Super. 231, 255-56 (App. Div. 2017)).  If a court bases a decision on a misconception of the law, such a decision is not entitled to deference and will be reviewed de novo on appeal.  C.W., 449 N.J. Super. at 255.

## III.

On this appeal, the State argues that the trial court abused its discretion in ordering the release of Williams and Simpson.  The State agrees with the trial court's findings that both defendants present substantial and unjustifiable risks to the community.  The State disputes, however, the court's findings that it delayed the start of the trial of Williams or that it was not ready to commence the trial of Simpson.

The State does not dispute that the speedy trial deadlines for both Williams and Simpson had expired before February 25, 2020, when the trial court heard the State's motion to extend Williams' detention and Simpson's

A-2850-19T6

motion to terminate his detention. Accordingly, the issue before us is whether the trial court abused its discretion in finding that the State had unreasonably delayed the start of Williams' trial and the State was not ready to commence Simpson's trial.

As already noted, the trial court made findings concerning the delays based on the State's delay in producing material discovery and its delay in investigating and interviewing Sexton, its key cooperating witness. The trial court detailed those delays in its orders and decisions issued on December 11, 2019, January 15, 2020, February 5, 2020, and March 2, 2020. In summary, the trial court found:

> (1)    the State continued its investigation after defendants were indicted in February 2018, obtained relevant and material information in May and July 2019, but only produced that voluminous discovery to defendants in December 2019;
>
> (2)    despite moving to join all indictments against the seven defendants, the State unreasonably refused to produce all discovery concerning all defendants to each defendant; instead, insisting on only providing each defendant with the discovery concerning that defendant;
>
> (3)    when the court ordered the State to produce all discovery concerning all defendants to each defendant in December 2019, the State unreasonably delayed that production and was still producing voluminous materials to defendants in late January 2020; and

14

(4) the State unreasonably delayed formally interviewing Sexton until January 30, 2020; Sexton was a key witness against all defendants; on January 30, 2020, Sexton admitted that he had previously falsely accused Wroten of a crime that Sexton committed.

We discern no abuse of discretion in any of those findings. Indeed, the record includes substantial credible evidence supporting the trial court's findings concerning the State's unreasonable delays.

The State argues that the trial was delayed when the trial court barred Sexton from testifying and we granted leave to appeal and stayed the trial pending that appeal. We reject that argument because it confuses the cause with the effect. The cause of the February 5, 2020 order barring Sexton from testifying was the State's unreasonable delay in formally interviewing Sexton until January 30, 2020. The effect was the leave to appeal and the stay. That effect, which was granted on the State's application, does not excuse the initiating cause: the State's unreasonable delay.

The trial court, which has overseen these cases since their inception in December 2017, found that it was unreasonable for the State to wait for over seven months to formally interview Sexton about an alibi defense asserted by Wroten in April 2019. The court found it particularly unreasonable given that the Sexton interview was conducted one day before Williams' trial had been

15

scheduled to start on January 31, 2020. Shortly before that time, on January 27, 2020, Williams' trial date had been moved to February 20, 2020, to accommodate one of the defense counsel's inability to appear for medical reasons.

The State also argues that the trial court's finding of unreasonable delay is an improper discovery sanction contrary to the holding in State v. Dickerson, 232 N.J. 2, 28 (2018). We disagree. Again, the State confuses cause with effect. To continue a detention beyond the speedy trial limits, the CJRA mandates that the trial court find that the start of the trial "was not due to unreasonable delay by the prosecutor." N.J.S.A. 2A:162-22(a)(2)(a). The State's delay in producing discovery caused the delay in the start of the trial because defendants had the right to obtain and review the voluminous discovery before trial. Properly viewed, that result is not a sanction but the logical consequence of a defendant's right to a speedy trial. We should not lose sight of the fact that Williams and Simpson still enjoy – just like every citizen – the presumption of innocence. See Coffin v. United States, 156 U.S. 432, 453 (1985); State v. Hill, 199 N.J. 545, 558-59 (2009). When the State has delayed trial, it is not a sanction to release defendants who have been charged with crimes but have been detained for over three years.

Finally, the State argues that Williams and Simpson pose a risk to the community if released and implicitly argues that it is the trial court that will be responsible for that risk. Not so. That argument ignores the State's responsibility under the CJRA. The CJRA authorizes the State to apply for a defendant's pretrial detention. Accordingly, it was the State that made that application in December 2017. The CJRA also accords such defendants a right to a speedy trial. When the trial court granted the State's application to detain Williams and Simpson in December 2017, the State knew it had 180 days from their indictment, or a maximum of two years, to commence the trial against defendants. That the trial of Williams has not commenced and that the trial date for Simpson has not been set is not the fault of any court; that responsibility rests with the State.

In summary, we discern no abuse of discretion in the trial court's determination that the State unreasonably delayed the commencement of the trial of Williams and that the State was not ready to commence the trial of Simpson. Consequently, the resulting responsibility for the release of defendants – which is mandated by the CJRA – rests with the State.

All that said, while this appeal was pending, the Supreme Court remanded the suppression issue for a <u>Franks</u> hearing. As already noted, we then dismissed

the State's interlocutory appeal of the trial court's February 5, 2020 order barring Sexton from testifying. We also vacated the stay of the trial. Therefore, the matters are now fully back in the trial court, but in circumstances different from when the March 2, 2020 orders were entered. Furthermore, the COVID-19 pandemic has also intervened and resulted in the suspension of all criminal trials. Exec. Order No. 103 (2020) (Mar. 9, 2020); Notice to the Bar, COVID-19 Coronavirus – Status of Court Operations; Immediate and Upcoming Plans (Mar. 12, 2020). We leave it to the further discretion of the trial court to determine what, if any, effect those intervening events should have on its orders releasing Williams and Simpson. Accordingly, we vacate our stay of the orders releasing Williams and Simpson but note that the trial court also stayed those orders so it can determine whether to lift those stays. We do not suggest that the trial court should reach a different ruling on defendants' release; rather, we simply point out that the trial court has the discretion to consider the intervening events.

Affirmed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2850-19T6