CHIEF JUSTICE RABNER delivered the opinion of the Court.
**157 When the State seeks to detain a defendant pretrial under the Criminal Justice Reform Act (CJRA), N.J.S.A. 2A:162-15 to -26, prosecutors must disclose "all exculpatory evidence" before the detention hearing, see R. 3:4-2(c)(2)(E). We now consider the appropriate remedy when the State fails to disclose exculpatory evidence before a detention hearing.
In this case, defendant Shaquan Hyppolite was charged with murder and weapons offenses. At the outset, the State relied on a single witness who spoke to the police *954 and identified defendant as the shooter. The State successfully moved to detain defendant and **158 released a statement by the witness along with other discovery before the detention hearing.
Defendant was indicted two months later, and the State disclosed additional materials afterward. Those materials revealed that the witness initially told the police he did not see the shooter. The witness had also identified two others he claimed were at the scene of the crime, but their newly disclosed statements contradicted him. Other evidence conflicted with the witness's version of events as well.
The trial court correctly found that the additional discovery contained exculpatory evidence that should have been disclosed before the detention hearing, pursuant to Rule 3:4-2(c)(2)(E) (then Rule 3:4-2(c)(1)(B)). The judge concluded the evidence was not material and declined to reopen defendant's detention hearing.
We hold that when exculpatory evidence is disclosed after a detention hearing, judges should use a modified materiality standard to decide whether to reopen the hearing. If there is a reasonable possibility that the result of the detention hearing would have been different had the evidence been disclosed, the hearing should be reopened.
Applying that standard in this case, we reverse and remand to the trial court to reopen the detention hearing.
I.
To recount the facts, we rely on the record of the detention hearing along with discovery the State provided before and after the hearing.
On March 29, 2017, police officers responded to a report of a shooting in a parking lot at Lafayette Gardens in Jersey City. When they arrived, they saw Terrel Smith's lifeless body lying on the pavement behind his car, a Jeep Liberty. According to an autopsy report, Smith had been shot multiple times. He was later pronounced dead at the hospital.
**159 The police identified "Michael Gregg"[1] as a witness and interviewed him. Over time, he made two separate -- and inconsistent -- statements to the police. In his first statement, a few hours after the shooting on March 29, 2017, Gregg said that he was in the victim's Jeep around the time of the shooting. After the victim got out of the car, Gregg said he heard three to four gunshots but did not see the shooter. Gregg then ran from the area.
Gregg spoke to the police again on June 8, 2017 and gave a second statement. According to the police report, early in the interview, Gregg said the victim had picked him up on the day of the shooting, and the two were selling drugs. They then drove to Lafayette Gardens to pick up more drugs from the victim's stash location. Gregg said he recognized several other men in the area including Quan, "Bill," and "Frank."
During a break in the interview, Gregg told the police he was worried about his safety and the safety of his family. He provided more details after the break: Quan approached the victim when he left the car to get more drugs; Quan was clutching something inside his hooded sweatshirt, which Gregg thought was a firearm; Quan and the victim had a short conversation on the driver's side of the car before Gregg heard a gunshot; and Gregg ran away as he heard several more gunshots.
Gregg told the police he had known Quan for about seven years and believed his real name was Shaquan. Gregg identified *955 defendant Shaquan Hyppolite from a photo array.
On June 20, 2017, defendant was charged and arrested on a three-count complaint that accused him of murder, N.J.S.A. 2C:11-3(a)(1) ; possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1) ; and unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1). The affidavit of probable cause in support of the complaint stated that "an eyewitness ... positively identified **160 Shaquan Hyppolite AKA Quan as the actor who" killed Terrel Smith.
The State moved for pretrial detention the next day. Two days later, the State made available fifty-one pages of discovery materials and a DVD recording of Gregg's interview on June 8, 2017. On the day of the detention hearing, July 6, 2017, the State also turned over a four-page written summary of that interview titled "Second Interview of [Gregg]." The State did not disclose Gregg's first statement before the hearing.
Pretrial Services recommended that defendant be detained. The Public Safety Assessment (PSA) scored defendant 1 out of 6 for risk of failure to appear and 2 out of 6 for risk of new criminal activity.
At the detention hearing, the State highlighted that a presumption of detention applied because of the homicide charge. See N.J.S.A. 2A:162-19(b). The State also stressed that defendant, who had recently turned eighteen, had an extensive juvenile history. Defendant did not challenge the existence of probable cause and took no position on detention.
The trial court found probable cause and concluded that defendant had not rebutted the presumption in favor of detention. The court also observed that defendant's PSA scores did not "take into account his extensive and serious juvenile record," which includes adjudications for aggravated assault, assault, and a weapons offense. The court accordingly ordered that defendant be detained.
Two months later, on September 12, 2017, a grand jury indicted defendant on the charges in the complaint. The State turned over additional discovery after the indictment, which included the following materials: Gregg's first statement to the police; a DVD recording of an interview of Bill on June 20, 2017; a police report and DVD recording of an interview of Frank on June 14, 2017; an application for a communications data warrant for Gregg's cell phone; and a report that summarized some surveillance footage **161 from the day of the shooting. As noted earlier, Gregg had told the police that he saw both Bill and Frank at the shooting.
This marked the first time defendant received Gregg's initial statement to the police, in which he denied having seen the shooter. Bill's statement revealed that he told the police he was in jail at the time of the homicide. Frank told the police that he was en route to Popeyes when he heard gunshots from Lafayette Gardens. The application for the communications data warrant noted that an eyewitness saw the victim engaged in a conversation with three men before the shooting, "which conflicts with [Gregg's] version of events."
Based on the new discovery, defendant filed a motion to reopen the detention hearing. Defendant argued that the State violated Rule 3:4-2(c) when it failed to disclose Gregg's first statement and other exculpatory materials before the hearing. Defendant claimed that he should be released because of the discovery violation.
The trial court issued a thirteen-page written opinion and denied the application. The court found that the additional discovery contained exculpatory evidence, and that the State therefore violated Rule 3:4-2(c) by failing to disclose the items before the hearing. The court, however, did not *956 find that defendant's due process rights had been violated because the evidence withheld was not material. The court explained that "introduction of the exculpatory impeachment evidence at the detention hearing would not have had the reasonable probability of changing the outcome of the probable cause determination." For that reason, and because defendant had been indicted and now possessed the discovery materials, the court concluded that no further action was required.
The Appellate Division denied defendant's motion for leave to appeal. We granted leave to appeal, 232 N.J. 370, 180 A.3d 699 (2018), and also granted amicus status to the Attorney General and the American Civil Liberties Union of New Jersey (ACLU).
**162 II.
Defendant argues that the State violated the court rules and his right to due process when it failed to disclose exculpatory evidence before the detention hearing. In all such cases, defendant contends, courts should order a new detention hearing and not first assess whether the evidence is material. Defendant also submits that trial judges should impose appropriate sanctions to deter future discovery violations.
The ACLU echoes defendant's arguments and adds that courts should deter willful or egregious violations with a referral to an ethics board.
In its brief in opposition to the motion for leave to appeal, the State maintained that "[n]one of the evidence at issue in this appeal is exculpatory." At oral argument, the State conceded the evidence was exculpatory and should have been disclosed before the detention hearing. In any case, the State agrees with the trial judge that the evidence was not material and would not have affected the court's rulings on probable cause or detention. As a result, the State contends that defendant's due process rights were not violated.
The Attorney General also argues that the trial court properly denied defendant's motion to reopen the detention hearing. Although "failure to disclose exculpatory evidence may violate the discovery rule," the Attorney General submits that "it does not violate due process unless the evidence is 'clearly exculpatory' and directly negates the defendant's guilt." (citing State v. Hogan, 144 N.J. 216, 237, 676 A.2d 533 (1996) ). The appropriate remedy in those cases, according to the Attorney General, is to reopen the affected phase of the detention hearing.
III.
We reviewed the history of criminal justice reform and the CJRA in State v. Robinson, 229 N.J. 44, 52-62, 160 A.3d 1 (2017).
**163 This appeal relates to pretrial detention, so we briefly review parts of the new law and court rules to provide relevant context.
Overall, the CJRA "shall be liberally construed" to rely "primarily ... upon pretrial release," without the use of monetary bail, to achieve three aims: to ensure that defendants appear in court, to protect the safety of the community, and to guard against "attempt[s] to obstruct the criminal justice process." N.J.S.A. 2A:162-15.
A rebuttable presumption of detention exists in only two circumstances: when a court finds probable cause that a defendant committed murder or a crime that carries a sentence of life imprisonment. N.J.S.A. 2A:162-19(b). In all other instances, the statute affords defendants a presumption of release. N.J.S.A. 2A:162-18(b).
The State can seek to detain certain defendants pretrial. See N.J.S.A. 2A:162-19(a) (listing offenses for which prosecutors may file detention motion). Critical to *957 this appeal, when the State seeks pretrial detention, the prosecutor must provide the defendant with "all exculpatory evidence" "no later than 24 hours before the detention hearing." R. 3:4-2(c)(2)(E). The prosecution must also disclose "any available preliminary law enforcement incident report," "the affidavit of probable cause," "all statements or reports relating to the affidavit," and "all statements or reports" that relate to (1) "additional evidence the State relies on to establish probable cause at the hearing" and (2) the risk of flight, danger, and obstruction "the State advances." R. 3:4-2(c).[2]
Section 19(e)(1) outlines important procedural protections defendants are guaranteed at the hearing, including the right to counsel, to testify, to present and cross-examine witnesses, "and to **164 present information by proffer or otherwise." N.J.S.A. 2A:162-19(e)(1).
At the hearing, the State must demonstrate two things. First, it must establish probable cause for the offenses charged, unless the defendant has already been indicted. N.J.S.A. 2A:162-19(e)(2). Second, to rebut the presumption of release, the State must "prove[ ] by clear and convincing evidence that no release conditions would reasonably assure the defendant's appearance in court, the safety of the community, or the integrity of the criminal justice process." State v. Ingram, 230 N.J. 190, 200-01, 165 A.3d 797 (2017) (citing N.J.S.A. 2A:162-18(a) ). In a case like this, when a defendant is charged with murder, if he or she successfully rebuts the presumption of detention, N.J.S.A. 2A:162-19(e)(2), the State must then present clear and convincing evidence that detention is warranted, N.J.S.A. 2A:162-19(e)(3).
To decide whether the State has satisfied its burden to justify pretrial detention, "the court may take into account ... [t]he nature and circumstances of the offense," "[t]he weight of the evidence," the defendant's "history and characteristics," the "nature and seriousness" of the risk of danger and obstruction the defendant presents, and Pretrial Services' recommendation. N.J.S.A. 2A:162-20.
At any time before trial, a defendant may apply to reopen a detention hearing under N.J.S.A. 2A:162-19(f), which states that
[t]he hearing may be reopened ... if the court finds that information exists that was not known to the prosecutor or the eligible defendant at the time of the hearing and that has a material bearing on the issue of whether there are conditions of release that will reasonably assure the eligible defendant's appearance in court when required, the protection of the safety of any other person or the community, or that the eligible defendant will not obstruct or attempt to obstruct the criminal justice process.
IV.
This case poses a discrete question under the CJRA: what is the appropriate remedy when the prosecution fails to disclose exculpatory evidence before a detention hearing? Because the grand jury **165 returned an indictment in this case, which established probable cause, N.J.S.A. 2A:162-19(e)(2), we are concerned only with the effect of late disclosure on the detention decision. *958 A.
The requirement to turn over exculpatory evidence before a detention hearing is grounded in the State's affirmative obligation to disclose evidence favorable to a defendant. See Kyles v. Whitley, 514 U.S. 419, 432, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) ; State v. Nash, 212 N.J. 518, 544, 58 A.3d 705 (2013). That well-settled concept is discussed at length in the United States Supreme Court's seminal decision in Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Brady held that the prosecution's "suppression ... of evidence favorable to an accused ... violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. 1194 ; accord State v. Carter, 91 N.J. 86, 110, 449 A.2d 1280 (1982) (quoting Brady ). Impeachment evidence, as well as exculpatory evidence, is governed by the Brady rule. United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) ; State v. Knight, 145 N.J. 233, 245-46, 678 A.2d 642 (1996).
Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Bagley, 473 U.S. at 682, 105 S.Ct. 3375 ; see also State v. Marshall, 148 N.J. 89, 156, 690 A.2d 1 (1997). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Bagley, 473 U.S. at 682, 105 S.Ct. 3375.
The State and Attorney General point to a related standard outlined in Hogan, which applies to grand jury proceedings, not detention hearings. In Hogan, the Court "impos[ed] a limited duty on prosecutors" to inform the grand jury of exculpatory evidence "that both directly negates the guilt of the accused and is clearly exculpatory." 144 N.J. at 237, 676 A.2d 533. The standard "recognize[d]
**166 that the sole issue before the grand jury is whether the State has made out a prima facie case of the accused's guilt," ibid.-- in other words, whether there is probable cause to indict. Disclosure of all exculpatory evidence follows later -- after indictment and well in advance of trial. R. 3:13-3(b)(1).
In contrast to Hogan, Rule 3:4-2(c)(2)(E) calls for disclosure of "all exculpatory evidence" before a detention hearing for a simple reason: to ensure that defendants receive a fair hearing at which courts decide not only the issue of probable cause but also whether a defendant's liberty will be restrained. To craft and present arguments for release, defendants are entitled to all exculpatory evidence before the hearing. Hogan, thus, does not govern pretrial detention hearings.
B.
Neither the statute nor the Rule outline what should happen if all exculpatory evidence is not disclosed. We consider certain options the parties and amici advance and then outline a modified materiality standard that we believe aligns with the goals of the CJRA and related court rules.
1.
The Attorney General points to section 19(f), which offers guidance in a different setting. The section imposes a materiality standard to determine whether to reopen a detention hearing when information "that was not known ... at the time of the hearing" later surfaces. N.J.S.A. 2A:162-19(f). The court may reopen the hearing if the newly revealed evidence "has a material bearing" on whether the defendant poses a risk of flight, danger, or obstruction. Ibid.
Section 19(f) addresses real-life situations that occur in ongoing investigations.
*959 As investigators for the State and defense continue to gather evidence and prepare a case for trial, they may well learn of new information that relates to the three detention **167 factors. Section 19(f) eliminates the need for an additional hearing any time new information -- no matter how inconsequential -- is revealed or developed.
Brady and its progeny, of course, set forth the traditional materiality standard to assess the prosecution's withholding of exculpatory evidence. See Bagley, 473 U.S. at 682, 105 S.Ct. 3375. The "reasonable probability" standard, though, is routinely applied after trial. When evidence is disclosed in time for its effective use at trial, no denial of due process has occurred. United States v. Starusko, 729 F.2d 256, 262 (3d Cir. 1984). After trial, courts measure newly disclosed exculpatory evidence against the backdrop of a full trial record. Judges can then assess whether there is a "reasonable probability that ... the result of the proceeding would have been different" in light of the full presentation of the State's case, any defense case, and cross-examination by both sides. See Knight, 145 N.J. at 246, 678 A.2d 642 (quoting Bagley, 473 U.S. at 682, 105 S.Ct. 3375 ).
Although the pure materiality standard in Brady provides a fair and workable approach for motions filed after trial, the test is not ideal for evidence withheld before a detention hearing. Detention hearings, unlike trials, are abbreviated proceedings. See Robinson, 229 N.J. at 68, 160 A.3d 1 ("[T]he focus is not on guilt, and the hearing should not turn into a mini-trial."). And parties routinely proceed by proffer, as the statute permits. N.J.S.A. 2A:162-19(e)(1) ; Ingram, 230 N.J. at 212-13, 165 A.3d 797. Counsel can thus rely on hearsay evidence that is not subject to cross-examination.
Detention hearings also ordinarily take place within days of an arrest. N.J.S.A. 2A:162-19(d). At such an early stage, a defense attorney might decide not to proffer particular evidence or raise certain arguments for strategic purposes.
For all of those reasons, the record of a detention hearing is not nearly as complete as the record a court can examine to assess a post-trial Brady motion. Equally important, defense counsel cannot **168 always fully exercise options available under the CJRA, see N.J.S.A. 2A:162-19(e)(1), without first reviewing exculpatory evidence.
Under the circumstances, to require pretrial detainees to show a "reasonable probability" that their detention hearing would have ended differently -- based on the abridged record before the trial court -- may well be impractical and set the bar too high.
2.
A different option that defendant proposes -- requiring a new hearing every time exculpatory evidence is not disclosed -- would not always serve the purpose of the Rule and the statute. Together, they advance twin yet competing aims. They help protect public safety by allowing judges to detain high-risk defendants in appropriate cases. They also help ensure that defendants facing the loss of liberty can prepare adequately for the hearing and challenge the State's application for detention.
Balancing those interests, the CJRA and accompanying court rules include various procedural safeguards for the benefit of defendants. See, e.g., N.J.S.A. 2A:162-19, -20; R. 3:4-2. And Robinson calls for "far broader discovery" at detention hearings than federal law requires. 229 N.J. at 61, 160 A.3d 1.
Those guarantees are designed to ensure fairness, not to punish the State. As this Court explained a half century ago *960 when it discussed the Brady rule, its "purpose ... is not to punish society for a prosecutor's conduct, but to avoid an unfair trial of an accused." State v. Vigliano, 50 N.J. 51, 61, 232 A.2d 129 (1967). More recently, in State v. Dickerson, 232 N.J. 2, 28, 177 A.3d 788 (2018), we noted that it is improper to release a defendant as a "sanction" for the prosecution's failure to comply with its discovery obligations before a pretrial detention hearing. "The public cannot be imperiled" to punish what the court "perceives to be bad conduct." Ibid. **169 The same fairness and public safety concerns are paramount here, and they guide our application of the court's discovery rules. To require a new detention hearing each time the prosecution does not disclose all exculpatory evidence would serve only to punish or deter the State in some instances, not to enhance fairness or satisfy due process. Imagine a case, for example, in which five witnesses saw the accused shoot a victim, and the State disclosed all of their statements but failed to provide a single prior inconsistent statement for one eyewitness. The evidence is plainly exculpatory because it is favorable to the accused. Yet it could hardly have an impact on the outcome of the hearing. The same could well be true of minor inconsistencies that might be used to impeach a witness. Although exculpatory, if the evidence bore little relation to the detention factors or the weight of the evidence in a given case, what purpose would a new hearing serve?
3.
In light of the concerns set forth above, we adopt a modified materiality standard for detention decisions: Judges should examine whether there is a reasonable possibility -- not probability -- that the result of the hearing would have been different had the evidence been disclosed. See Bagley, 473 U.S. at 682, 105 S.Ct. 3375 ; Knight, 145 N.J. at 246, 678 A.2d 642.[3] That **170 standard focuses the parties and the court on whether evidence is important to the hearing's outcome from a reasonably objective vantage point.
The burden is on the State to demonstrate that a new hearing is not required under that standard. In other words, when the State withholds exculpatory evidence, it has the burden to show that there is no reasonable possibility the withheld evidence would have changed the outcome of the hearing. If the State cannot make that showing, the detention hearing should be reopened.
*961 The test does not require defendants to show that they reasonably would have prevailed at the earlier, abbreviated hearing. At the same time, a fanciful possibility that the outcome would be different would not satisfy the standard.
The approach presents no due process concerns under federal or state law. See U.S. Const. amend. XIV ; Doe v. Poritz, 142 N.J. 1, 99, 662 A.2d 367 (1995) (discussing N.J. Const. art. I, ¶ 1 ); see also Robinson, 229 N.J. at 74-76, 160 A.3d 1 (concluding that discovery protections under CJRA "satisfy the requirements of due process"). To begin with, the standard is more favorable to defendants than what Brady and Bagley call for. See Brady, 373 U.S. at 87, 83 S.Ct. 1194 (finding due process violation when prosecution fails to disclose material exculpatory evidence); Bagley, 473 U.S. at 682, 105 S.Ct. 3375 (using higher "reasonable probability" threshold to establish materiality). It would also be difficult for defendants to claim a constitutional right to reopen a hearing when the State shows that there is no reasonable possibility that the outcome of the case would be different. See Robinson, 229 N.J. at 74-76, 160 A.3d 1.
**171 In his brief requesting leave to appeal, defendant notes that he "sought immediate release to remedy the harm caused by the State in withholding exculpatory evidence at the detention hearing." For the reasons expressed in Dickerson, release is not an appropriate remedy for a discovery violation, as a general proposition. 232 N.J. at 28, 177 A.3d 788. Such an outcome is not required by the Federal or State Constitutions and is not an appropriate response to legitimate public safety concerns.
C.
We add the following to give judges and practitioners greater guidance in this novel area. We envision a streamlined practice: When a defendant learns that exculpatory evidence was not disclosed before a detention hearing, counsel may move to reopen the hearing. In support of the motion, defendants should present a concise, specific statement about how the new evidence could reasonably have affected the outcome. Among other things, counsel can explain how the evidence undermined a finding at the initial hearing, such as the weight of the evidence, N.J.S.A. 2A:162-20(b), or how the defendant would have proffered other information or presented different arguments or counter-arguments had the exculpatory materials been disclosed earlier. The application need only contain a modest showing of the reasons a new hearing is warranted; the request itself is not intended to serve as a substitute for the hearing. The prosecution's response can be similarly focused and brief in its attempt to satisfy its burden.
Judges retain discretion to decide whether to reopen a detention hearing. For example, they can dispense with a hearing under the hypothetical considered earlier -- if newly disclosed exculpatory evidence would impeach only one of five witnesses who saw a defendant shoot a victim. Other inconsistencies would likewise need to be assessed in light of the circumstances of the case. In some instances, it might matter if a witness placed the time of an event at precisely 2 p.m. and later estimated the time at 2:05 p.m.;
**172 in other cases, the difference might be nothing more than a minor discrepancy.
When a court denies a motion and declines to reopen the hearing, it should provide a statement of reasons for review on appeal. From a practical standpoint, judges can consider how best to use scarce judicial resources. Here, faced with a novel question, the trial court issued a thoughtful, thirteen-page written decision and carefully considered what standard should *962 apply. In the next case, it might take considerably less time simply to conduct a new hearing.
At different places, the parties discuss whether the proper relief is to "reopen" the hearing or hold a "new" one. In practice, the two terms amount to essentially the same thing. At the hearing, the trial court must again decide whether the State has presented clear and convincing evidence to justify detention. N.J.S.A. 2A:162-15, -18(a)(1), -19(e)(3). To make that determination, the court can take into account all relevant factors that bear on detention, see N.J.S.A. 2A:162-20, including all exculpatory evidence disclosed before and after the initial hearing as well as any other evidence or arguments presented at either hearing. The parties may also rely on and proffer the record from the prior hearing.
After assessing the full body of evidence, judges must make the required statutory findings. When appropriate, judges may incorporate previous findings that are still relevant.
V.
The Public Defender estimated that since the CJRA was implemented on January 1, 2017, the prosecution's failure to disclose exculpatory material has been raised in only a handful of cases. For context, there were more than 14,000 detention hearings in the first calendar year of the CJRA. See Criminal Justice Reform Report to the Governor and Legislature 14 (Feb. 2018), https://www.njcourts.gov/courts/assets/criminal/2017cjrannual.pdf. Like the Public Defender, we recognize that the small number could be **173 understated for various reasons. Also, some cases may reflect unintentional mistakes by the prosecution. Overall, the statistics generally demonstrate good faith and a commitment by counsel to abide by the court rules. The State, of course, must continue to exercise diligence in fulfilling its discovery obligation.
If, however, a court found that a prosecutor engaged in willful or egregious misconduct by intentionally withholding exculpatory evidence, the court should refer the matter to the Office of Attorney Ethics. See Code of Judicial Conduct, r. 3.15(B); see also RPC 3.8(d) ("The prosecutor in a criminal case shall make timely disclosure to the defense of all evidence known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense ...."). Such referrals would deter deliberate and egregious misconduct. To decide whether a referral is warranted in an appropriate case, the trial court should hold a hearing to assess the reason for the violation and the prosecution's intent.
VI.
We find that the detention hearing in this case should be reopened because of the belated disclosure of exculpatory evidence.
The trial court properly found that the State failed to disclose exculpatory evidence before the hearing. The affidavit of probable cause and preliminary law enforcement incident report, coupled with the State's presentation at the detention hearing, reveal that the homicide charge in this matter rested heavily on a single witness -- Gregg -- who identified defendant as the shooter. That evidence was undermined by Gregg's earlier statement that he did not see the shooter. Two other statements -- by Bill and Frank -- and the communications data warrant also conflict with Gregg's account and could be used to impeach him.
Defendant should have an opportunity to use the new evidence to try to rebut the presumption of detention. At a minimum, he can proffer the new evidence and present arguments on the overall weight of the *963 evidence. To be clear, though, we do not **174 decide the merits of the hearing today and do not find that the proceeding should end differently because of the new evidence. But even with a presumption of detention, N.J.S.A. 2A:162-19(b), and defendant's juvenile record, there is a reasonable possibility that the result would have been different. Defendant is therefore entitled to a new detention hearing.
VII.
For the reasons outlined above, we reverse the trial court's ruling not to reopen the detention hearing. The case is remanded for further proceedings consistent with this opinion.
JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in CHIEF JUSTICE RABNER's opinion.

We use fictitious names for all of the witnesses to protect their privacy at this stage.

Robinson outlined those areas of discovery and listed them in Rule 3:4-2(c)(1)(B) at the time. 229 N.J. at 69-72, 160 A.3d 1. The rule was amended and revised afterward; it now appears at Rule 3:4-2(c)(2) (effective September 1, 2018). The current rule retains the same categories of discovery materials and adds that they must be disclosed at least twenty-four hours before a detention hearing. R. 3:4-2(c)(2).

The "reasonable possibility" standard can be found in various other areas of the law. See, e.g., N.J.S.A. 9:17-48(d) (standard for genetic testing when parentage is in doubt); Falls City Indus., Inc. v. Vanco Beverage, Inc., 460 U.S. 428, 434-35, 103 S.Ct. 1282, 75 L.Ed.2d 174 (1983) (standard to establish prima facie violation of illegal price discrimination); Rosales-Lopez v. United States, 451 U.S. 182, 192-93, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981) (standard to determine whether failure to inquire into racial prejudice during voir dire in appropriate cases amounts to reversible error); United States v. Lopez-Velasquez, 629 F.3d 894, 895, 901 (9th Cir. 2010) (en banc) ("[A]n [immigration judge's] duty is limited to informing an alien of a reasonable possibility that the alien is eligible for relief at the time of the [deportation] hearing."); 8 C.F.R. § 1208.13(b)(2)(i)(B) (standard to establish asylum eligibility).
Moreover, this is not the first time a possibility standard is advanced in the context of exculpatory evidence. Justice Souter raised questions about Brady's "reasonable probability" standard in his opinion in Strickler v. Greene, 527 U.S. 263, 297-301, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (Souter, J., concurring in part and dissenting in part). Because he believed the term could be confused with "more likely than not," he recommended "speaking of a 'significant possibility' of a different result to characterize the Brady materiality standard." Id. at 300, 119 S.Ct. 1936.