# **RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0485-20T6

STATE OF NEW JERSEY,

      Plaintiff-Appellant,

v.

ANDRE X. CHANCE,

      Defendant-Respondent.

_____

Submitted December 16, 2020 – Decided December 29, 2020

Before Judges Geiger and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment Nos. 19-10-0774 and 19-10-0802.

Camelia M. Valdes, Passaic County Prosecutor, attorney for appellant (Mark Niedziela, Assistant Prosecutor, of counsel and on the brief).

Joseph E. Krakora, Public Defender, attorney for respondent (Laura B. Lasota, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

The State appeals from an October 8, 2020 order granting defendant Andre X. Chance's motion to reopen his detention hearing and releasing him from pretrial detention on Level III monitoring plus home confinement and enrollment in a drug treatment program. We reverse.

We glean the following facts from the record. On May 3, 2019, defendant was arrested and charged with multiple drug offenses that stemmed from a narcotics investigation that included several controlled buys and culminated with the execution of a search warrant of a residence in Patterson. During the execution of that warrant, defendant was observed throwing clear plastic bags out of a window. The bags were recovered and contained 135 glassine envelopes of heroin, 21 vials and 1 knotted bag of cocaine, 34 vials of MDMA,[1] 8 grams of crack cocaine, and 2 bags of marijuana.

The State moved for pretrial detention. The Public Safety Assessment (PSA) recommended no release and scored defendant at a six for both risk of failure to appear and risk of new criminal activity. The trial court denied pretrial detention and released defendant on Level III monitoring plus home detention. The release conditions required defendant to remain at home except while

---

[1] MDMA is an acronym for 3,4-Methylenedioxymethamphetamine, a synthetic amphetamine derivative commonly known as ecstasy or molly. In re Kollman, 210 N.J. 557, 563 (2012).

A-0485-20T6

attending attorney meetings, court appearances, and doctor's appointments, and that defendant "not commit any offense during the period of release."

Defendant was charged in Indictment No. 19-10-0774 (the first indictment) with: three counts of third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1); third-degree distribution of CDS, N.J.S.A. 2C:35-5(a)(1) and -5(b)(3); third-degree distribution of CDS within 1000 feet of school property, N.J.S.A. 2C:35-7; three counts of third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and -5(b)(3); four counts of third-degree possession of CDS with intent to distribute within 1000 feet of school property, N.J.S.A. 2C:35-7(a); fourth-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and -5(b)(12); and fourth-degree hindering, N.J.S.A. 2C:29-3(a)(3).

On September 17, 2019, defendant was arrested and charged with drug offenses stemming from a routine motor vehicle stop. Police seized 169 glassine envelopes of heroin and 35 vials of crack cocaine from defendant's person and vehicle. Defendant was charged in Indictment No. 19-10-0802 (the second indictment) with: two counts of third-degree possession of CDS; two counts of third-degree possession of CDS with intent to distribute; and two counts of third-

degree possession of CDS with intent to distribute within 1000 feet of school property.

A violation of monitoring was filed against defendant because of his new charges and his violation of home confinement. Pretrial Services recommended that defendant's pretrial release be revoked.

On September 18, 2019, the State filed separate motions to revoke defendant's pretrial release on the first indictment pursuant to Rule 3:26-2(d)(1) and to detain defendant on the second indictment. The PSA for the second indictment scored defendant six for both risk of failure to appear and new criminal activity.

The court granted the revocation motion. The judge found that defendant had committed new offenses while on pretrial release and that no amount of monetary bail, non-monetary conditions, or combination of both, would reasonably assure defendant's appearance in court when required and the protection of the safety of any other person in the community.

The court also granted the motion for detention on the second indictment, making the same findings as on the revocation motion. The court noted the nature and circumstances of the offenses charged (six third-degree CDS offenses), the weight of the evidence against defendant (the personal

A-0485-20T6

observations of the officers and physical evidence seized), the history and characteristics of defendant (including his criminal history as reflected in the PSA), the nature and seriousness of the danger to the community that would be posed by defendant's release, the fact that defendant was on pretrial release and probation at the time of the new arrest, the PSA scores, and the PSA's recommendation that defendant be detained.

Defendant appealed the detention order imposed on the second indictment. We affirmed. State v. Chance, No. A-0399-19 (App. Div. Oct. 16, 2019).

On January 23, 2020, defendant applied and was evaluated for entry into Drug Court. The substance abuse evaluation recommended defendant attend intensive outpatient (IOP) treatment. Defendant was found clinically eligible but not legally acceptable for Drug Court due to a prior adjudication. See "New Jersey Statewide Drug Court Manual" at 8-10 (rev. Dec. 2020).

On September 4, 2020, defendant moved to reopen the revocation and detention hearings, arguing in part that he should be released pretrial as his rights to speedy trial and due process were violated due to his extended pretrial detention caused by the coronavirus pandemic's impact on the scheduling of jury trials. Notably, defendant did not argue that he should be released because

he needed substance abuse treatment and had been deemed clinically eligible for Drug Court. Nor did he argue that the PSA scores were overstated.

On October 8, 2020, the court summarily rejected defendant's speedy trial and due process arguments. Nevertheless, the court sua sponte considered and found that new information, which was unknown to the parties at the time of the original hearings, had a material bearing on the issue of detention that warranted reopening the detention hearings; namely, that defendant needed substance abuse treatment and was clinically eligible for Drug Court.

The court also examined the PSA scores for risk of failure to appear and new criminal activity and concluded they were incorrect. The court reduced the scores for risk of failure to appear from six to three and for new criminal activity from six to five. Based on these adjustments, the court concluded the PSA should have recommended release on Level III monitoring.

Factoring in defendant's need for substance abuse treatment, clinical eligibility for Drug Court, and reduced PSA scores, the court found that conditions of pretrial release could be imposed to reasonably assure that defendant would appear in court when required, that the safety of the public would be preserved, and that he would not obstruct the criminal justice process. The court ordered that defendant be released on Level III monitoring plus home

A-0485-20T6

detention with an additional condition that he enroll in an IOP drug treatment program within two weeks.

The State moved for leave to appeal and to stay defendant's release pending appeal. We granted the motion and accelerated the appeal.

The State raises the following point for our consideration:

> THE TRIAL COURT ABUSED ITS DISCRETION AND IMPROPERLY REOPENED DEFENDANT'S PRETRIAL DETENTION HEARING AND ERRONEOUSLY ORDERED RELEASE.

The Criminal Justice Reform Act (CJRA), N.J.S.A. 2A:162-15 to -26, "allows for pretrial detention of defendants who present such a serious risk of danger, flight, or obstruction that no combination of release conditions would be adequate." State v. Robinson, 229 N.J. 44, 54 (2017) (citing N.J.S.A. 2A:162-18(a)(1)). Except "when a court finds probable cause that a defendant committed murder or a crime that carries a sentence of life imprisonment[,] N.J.S.A. 2A:162-19(b)[,] . . . the statute affords defendants a presumption of release[,] N.J.S.A. 2A:162-18(b)." State v. Hyppolite, 236 N.J. 154, 163 (2018).

The State can move to detain certain defendants pretrial. Ibid. See N.J.S.A. 2A:162-19(a) (listing offenses for which prosecutors may seek detention). "[T]o rebut the presumption of release, the State must 'prove[] by clear and convincing evidence that no release conditions would reasonably

7

assure the defendant's appearance in court, the safety of the community, or the integrity of our criminal justice process.'"  Id. at 164 (alteration in original) (quoting State v. Ingram, 230 N.J. 190, 200-01 (2017)).

A defendant may apply to reopen a detention hearing under N.J.S.A. 2A:162-19(f), which provides:

> The hearing may be reopened . . . if the court finds that information exists that was not known to the prosecutor or the eligible defendant at the time of the hearing and that has a material bearing on the issue of whether there are conditions of release that will reasonably assure the eligible defendant's appearance in court when required, the protection of the safety of any other person or the community, or that the eligible defendant will not obstruct or attempt to obstruct the criminal justice process.
>
> [N.J.S.A. 2A:162-19(f).]

Section 19(f) "imposes a materiality standard to determine whether to reopen a detention hearing when information 'that was not known . . . at the time of the hearing' later surfaces."  Hyppolite, 236 N.J. at 166 (alteration in original) (citing N.J.S.A. 2A:162-19(f)).  "The court may reopen the hearing if the newly revealed [information] 'has a material bearing' on whether the defendant poses a risk of flight, danger, or obstruction."  Ibid. (quoting N.J.S.A. 2A:162-19(f)).

"Judges should examine whether there is a reasonable possibility — not probability — that the result of the [detention] hearing would have been

8

different had the" new information been disclosed at the time of the initial detention hearing. Id. at 169. "That standard focuses the parties and the court on whether [the information] is important to the hearing's outcome from a reasonably objective vantage point." Id. at 169-70. Accordingly, "[a] fanciful possibility that the outcome would be different would not satisfy the standard." Id. at 170. The State has the burden to demonstrate that a new hearing is not required. Ibid.

We review a decision whether to reopen a detention hearing under N.J.S.A. 2A:162-19(f) for abuse of discretion. Id. at 171. We likewise review the granting or denial of pretrial release and the conditions of release for abuse of discretion. State v. S.N., 231 N.J. 497, 515 (2018). "A trial court abuses its discretion when it rests its decision on an impermissible basis or fails to consider relevant factors." State v. Paul, ___ N.J. Super. ___, ___ (App. Div. 2020) (slip op. at 6) (citing S.N., 231 N.J. at 515). "We need not defer to 'a decision based upon a misconception of the law.'" Ibid. (quoting S.N., 231 N.J. at 515).

Applying these principles, we conclude that the trial court misplaced its discretion by reopening the detention hearing and granting release. Defendant's release on the first indictment was revoked because he violated the conditions by committing new offenses. He also violated the home confinement condition.

Defendant was also detained on the charges reflected in the second indictment. We affirmed his detention on the new charges. State v. Chance, No. A-399-19 (App. Div. Oct. 16, 2019).

The trial court's analysis of defendant's motion to reopen the detention hearing went well beyond the grounds argued by defendant. The court sua sponte considered defendant's clinical eligibility for Drug Court and the recommendation that he participate in an IOP drug treatment program. The court also examined the accuracy of the PSA scores for risk of failure to appear and new criminal activity and determined the scores should be lowered.

The record does not support the trial court's reduction of the PSA score for new criminal activity. Defendant committed new offenses while on pretrial release. Indeed, defendant was indicted for six new offenses less than seven months after the May 4, 2019 PSA was issued.

Nor does the record support the trial court's conclusion that releasing defendant on largely the same conditions as before—Level III plus home confinement—with an additional condition that he enroll in an IOP drug treatment program, will reasonably assure the protection of the safety of the community. Notably, the home confinement does not include electronic monitoring.

A-0485-20T6

The State established probable cause that defendant distributed heroin in a school zone, and while on pretrial release, possessed heroin and cocaine with intent to distribute within a school zone. These offenses bespeak the danger he poses to the community.[2]

The previous monitoring level failed to prevent new criminal activity. The record does not support the motion court's finding that reinstituting the same conditions plus enrollment in an IOP treatment program will reasonably assure the safety of the community, particularly since defendant will not be subject to the intensive supervision imposed on Drug Court participants, which includes monitoring compliance with treatment, frequent scheduled and random drug tests, and regular curfew checks.

More fundamentally, we conclude that neither the grounds raised by defendant to reopen the detention hearing, nor the additional facts considered by the trial court sua sponte, satisfied the requirements of N.J.S.A. 2A:162-19(f).

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] The danger posed by school zone offenses is reflected by the "real function" of N.J.S.A. 2C:35-7, which "require[s] a minimum term as part of the sentence of certain offenders who would normally be prosecuted under N.J.S.A. 2C:35-5." Cannel, N.J. Criminal Code Annotated, cmt. 3 on N.J.S.A. 2C:35-7 (2020).

A-0485-20T6