# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3234-21

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

FRANK P. CRUSEN,

    Defendant-Respondent.

_____

        Submitted September 13, 2022 – Decided September 30, 2022

        Before Judges Gilson and Rose.

        On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Mercer County, Complaint No. W-2022-977-1111.

        Angelo J. Onofri, Mercer County Prosecutor, attorney for appellant (Laura Sunyak, Assistant Prosecutor, on the brief).

        Robin Kay Lord, attorney for respondent.

PER CURIAM

By leave granted, the State appeals from a June 8, 2022 order that granted defendant's motion to reopen his detention hearing and denied the State's detention motion. Having considered the record in view of our deferential standard of review, we cannot conclude the trial court abused its discretion. Accordingly, we affirm.

I.

Defendant Frank P. Crusen was arrested on April 11, 2022, and charged in a complaint-warrant with first-degree reckless vehicular homicide within 1,000 feet of school property, N.J.S.A. 2C:11-5(b)(3)(a); third-degree assault by auto within 1,000 feet of school property, N.J.S.A. 2C:12-1(c)(3)(a); and third-degree causing death while driving with a suspended license, N.J.S.A. 2C:40-22(a). Defendant also was issued motor vehicle summonses for driving while intoxicated (DWI), N.J.S.A. 39:4-50; DWI on school property, N.J.S.A. 39:4-50(g)(1); reckless driving, N.J.S.A. 39:4-96; driving with a suspended or revoked license, N.J.S.A. 39:3-40; driving without a license, N.J.S.A. 39:3-10; and "traffic on marked lanes," N.J.S.A. 39:4-88. The State thereafter moved for pretrial detention pursuant to the Criminal Justice Reform Act (CJRA), N.J.S.A. 2A:162-15 to -26.

A-3234-21

During the April 26, 2022 remote detention hearing, the State presented the complaint-warrant, motor vehicle summonses, school zone map, defendant's driver abstract, the detective's incident report, and the affidavit of probable cause. Defendant's wife, Heather Beil, testified on his behalf, stating she worked remotely and was willing to assume supervision as his third-party custodian.

Defense counsel also proposed, as an additional condition, a "remote breath alcohol monitoring" mechanism, operated by a private detective, Robert Clark. Known as a "SCRAM" device, defense counsel explained the mechanism operates on facial recognition software, requiring defendant to blow into the unit to self-administer the test after Clark randomly contacts defendant three to four times per day. The costs associated for the device and monitoring system would be paid for by defendant. However, counsel acknowledged she did not "formally present evidence" about the mechanism during the hearing because the wireless carrier had shut down its 4G towers without notice to Clark's company, Offender Management Solutions, LLC (OMS). Therefore, OMS was attempting to mass produce adapters to be utilized via the carrier's 5G service.

Defense counsel also advised the court that after defendant was released from the hospital, and before an arrest warrant had issued or charges had been

filed, he retained her services. On counsel's advice, defendant enrolled in an alcohol program until the date of his arrest.

Following argument, the trial court reserved decision. The next day, on April 27, 2022, the court issued a bench decision, granting the State's motion. However, the court noted it would entertain an application containing "new evidence, new information that would have material impact on [its] decision." Apparently, the court thereafter invited the parties to a virtual "breakout room" and "suggested" it would reconsider its decision if the SCRAM device became available.[1] The court issued a memorializing order on May 9, 2022.

The court's written order largely tracked its oral findings. The court considered the nature and circumstances of the offenses charged, summarizing the facts leading to defendant's arrest as follows. Shortly before midnight on March 16, 2022, eighty-year-old Juan Jimenez-Barrantes, was driving a Honda CR-V, with his seventy-year-old wife, Margarita Gomez, seated next to him, when the car was struck from behind by a Nissan Pathfinder driven by defendant. The incident occurred on Route 1 South in Trenton. Local officers responded and determined the collision occurred near mile marker 1.8, which is about 836

---

[1] During the ensuing hearing on defendant's motion to reopen the detention hearing, defense counsel referenced the statements the court had made in the breakout room after the detention hearing.

feet from Martin Luther King Jr. (MLK) Elementary School.  The court elaborated:

> Evidence at the scene indicated little brake application by defendant, as there were minimal tire marks before the point of impact.  From the point of impact to the final resting place, defendant's car traveled approximately 287 feet and [Jimenez-Barrantes'] car travel[]ed approximately 532 feet, indicative of excess speed by defendant.  There was heavy damage to both the rear of [Jimenez-Barrantes'] car and the front of defendant's car.

All three parties involved in the incident were hospitalized.  Jimenez-Barrantes succumbed to his injuries the following day.  Neither Gomez nor defendant sustained life-threatening injuries.  The court noted: "At the hospital, defendant, who had a head injury, appeared to have slurred speech and aggressive behavior."  Police obtained a subpoena for defendant's blood tests; his blood alcohol content was .215 percent, well above the .08 percent limit for intoxication prescribed by N.J.S.A. 39:4-50(a).

The trial court also considered defendant's driver abstract, which revealed his license was suspended at the time of the incident.  Further, between 1999 and 2006, defendant's automobile driver's license had been suspended sixteen times and his commercial driver's license had been suspended six times.  Defendant's prior motor vehicle infractions included "driving after underage

drinking; driving while suspended; driving under the influence of liquor/drugs; two failures to comply with a court-ordered program (IDRC);[2] and failures to comply with a court installment order."

The Public Safety Assessment (PSA) recommended no release and included identical scores of three out of six for defendant's failure to appear and his risk of new criminal activity. The PSA cited an "elevated risk of violence" next to its "New Violent Criminal Activity Flag." The PSA further revealed defendant had a prior conviction in 2014 for third-degree eluding, N.J.S.A. 2C:29-2(b), and three prior disorderly persons convictions in 2002. Defendant had not been previously sentenced to incarceration for fourteen days or more. He also had no prior failures to appear pretrial (FTAP) in the past two years and one FTAP more than two years prior. According to the PSA, defendant had an active final restraining order (FRO), issued in 1984.

Turning to defendant's history and characteristics, the trial court noted defendant was forty-one-years old, with "strong ties to the local area." The court considered defendant was a lifelong Mercer County resident; a high school graduate; gainfully employed as an Amtrak engineer; married with children and siblings in the area; and a coach of multiple children's sports. The court also

---

[2] Intoxicated Driver's Resource Center.

cited defendant's "numerous character references that describe him as caring, kind, loyal, dependable, hardworking, responsible, dedicated to his family, and a valued member of the community."

The court concluded the State overcame the presumption of release by clear and convincing evidence. The court determined there were no conditions of release that could be imposed that would protect the safety of the community. Defendant did not appeal from the court's May 9, 2022 detention order.

Three days later, on May 12, 2022, defendant moved to reopen the detention hearing. Defendant cited "new and material information," including: (1) evidence that the distance between the collision and MLK Elementary School was 1,250 feet; (2) records confirming defendant completed his IDRC requirement; (3) the FRO cited in the PSA could not have been issued against defendant, who was four years old in 1984; (4) documentation confirming defendant was enrolled in a substance abuse treatment program for alcohol recovery and mental health treatment after the incident and prior to his arrest and can reenroll in treatment if released by the court; (5) the victim's autopsy report, furnished after the detention hearing, "supported the notion that the decedent was suffering from a heart condition at the time of the collision"; and (6) the availability of the electronic monitoring device referenced at the

7

detention hearing. Defendant sought release on Level III plus monitoring, "with added conditions of alcohol monitoring and substance abuse treatment."

The State opposed release. The State submitted additional exhibits for the court's consideration, including: photographs depicting the point of impact; the school zone around MLK Elementary School; a screen shot from a drone, depicting the measurement between the point of impact and the school zone was 930.02 feet and the point of impact and the school building was 971.79 feet; the victim's autopsy report, confirming the cause of Jimenez-Barrantes' death was "blunt impact injuries of the head"; defendant's IDRC records; and defendant's motor vehicle records.

At the June 3, 2022 hearing, Clark testified on behalf of defendant. The State did not call any witnesses. After hearing argument on the motion, the same judge who ordered defendant detained pretrial, reserved decision.

Three days later, on June 6, 2022, the court issued a cogent oral decision, granting defendant's motion to reopen the hearing and denying the State's detention motion. The court issued a memorializing order, reiterating its findings, on June 8, 2022.

Citing our Supreme Court's decision in State v. Robinson, 229 N.J. 44, 58 (2017), the trial court found defendant presented "new and previously unknown

information, namely, a measurement placing the subject collision outside the stated school zone, the immediate availability of the SCRAM [R]emote Breath Alcohol Testing device, with continuous monitoring by [OMS], and defendant's prior completion of an IDRC program."  The trial court further determined under State v. Hyppolite, 236 N.J. 154, 166-67 (2018), the new evidence was "material because it [wa]s important to the hearing's outcome from a reasonably objective vantage point, and it create[d] a reasonable possibility that the result of the hearing would have been different had the evidence been disclosed."  The court thus found defendant satisfied the governing standard to reopen the detention hearing.

Turning to the State's detention motion, the trial court considered the evidence submitted at the initial detention hearing and the new information submitted by both parties at the reopened hearing.  The court again found probable cause that defendant committed the charged offenses.  The court detailed its findings as to the nature and circumstances of the offense, the weight of the evidence, and defendant's history and characteristics, which were substantially similar to its initial findings.  The court again considered the PSA, which remained unchanged from the initial hearing.

The trial court also found no change in the "serious risk of danger to others and the community based upon the nature and circumstances of the instant offenses and defendant's prior criminal history." However, the court found "that risk [wa]s lessened by available treatment and the means to continually monitor and promptly report as to defendant's sobriety." The court found both Beil and Clark "credibly testified that they are able and willing to serve as defendant's third-party custodians." Persuaded that there was "a sufficiently high level of pretrial monitoring with appropriate conditions that would reasonably assure the safety of others and the community," the court departed from the PSA recommendation. The court ordered defendant released on Level III plus monitoring, with home detention, subject to the following conditions:

- Robert Clark, proprietor of [OMS], and Heather Biel . . . , serving as third-party custodians. Mr. Clark shall remotely administer [b]reath [a]lcohol [t]esting to defendant, utilizing the SCRAM [R]emote Breath Alcohol Testing Device with facial recognition, four (4) times daily, on a random basis, and promptly report by email and telephone call any missed or failed test, i.e., BAC above 0.0, to: Mercer County Pretrial Services; Office of the Mercer County Prosecutor, to the attention of A.P. Scott Gershman; the emergent Superior Court judge, and this [c]ourt. The monitoring shall be in place within 24 hours of defendant's release. The cost of such monitoring is strictly borne by defendant. Any violation of this condition of home detention

shall result in a warrant for defendant's arrest at the [c]ourt's discretion.

- No operation of a motor vehicle[.]

- Continued successful participation and compliance with alcohol, substance abuse and mental health treatment through the Footprints to Recovery Program. Defendant must provide proof of such participation to pretrial services on a biweekly basis.

- No contact with victim [Gomez.]

- No contact with any potential witnesses except Robert Clark for the sole purpose of compliance with daily administration of Remote Breath Alcohol Testing.

- Other general conditions whereby defendant SHALL NOT:

  o commit new offenses[;]

  o possess any firearm, destructive device, or other dangerous weapon[; or]

  o consume any alcohol or use any narcotic drug or controlled substance without a prescription from a licensed medical practitioner.

- Defendant must report to pretrial services telephonically once every other week and in person once every other week, beginning at 2:00 p.m. on the day after defendant's release, by telephone.

11

The trial court issued another order on July 8, 2022, granting the State's motion for a stay pending appeal.

On appeal, the State does not expressly challenge the propriety of the trial court's decision to reopen the detention hearing. Instead, the State raises a single point for our consideration, contending:

> THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT REMOTE ALCOHOL MONITORING MITIGATES THE SERIOUS RISK DEFENDANT POSES TO THE COMMUNITY.

## II.

We review pretrial detention orders under the CJRA for an abuse of discretion. State v. S.N., 231 N.J. 497, 500 (2018). Accordingly, "the proper standard of appellate review is whether the trial court abused its discretion by relying on an impermissible basis, by relying upon irrelevant or inappropriate factors, by failing to consider all relevant factors, or by making a clear error in judgment." Ibid.; see also State v. Chavies, 247 N.J. 245, 257 (2021). "[A] functional approach to abuse of discretion examines whether there are good reasons for an appellate court to defer to the particular decision at issue." State v. R.Y., 242 N.J. 48, 65 (2020) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)) (alteration in original).

Appellate courts are not, however, permitted "to substitute their factual findings for equally plausible trial court findings." State v. S.S., 229 N.J. 360, 380 (2017). This is particularly so where, as in this case, the trial court has made credibility findings. See e.g., State v. Elders, 192 N.J. 224, 244 (2007).

The principles espoused in the CJRA guide our review. The CJRA is "liberally construed to effectuate the purpose of primarily relying upon pretrial release," without the use of monetary bail to achieve three aims: to reasonably ensure that defendants appear in court; to protect the safety of the community; and to guard against obstruction of the criminal justice process. N.J.S.A. 2A:162-15.

When the State requests detention of a defendant entitled to the presumption of release under N.J.S.A. 2A:162-18(b), as in the present case, the State initially "must establish probable cause for the offenses charged, unless the defendant has already been indicted." Hyppolite, 236 N.J. at 164; see also N.J.S.A. 2A:162-19(e)(2). Secondly, "to rebut the presumption of release, the State must 'prove[] by clear and convincing evidence that no release conditions would reasonably assure the defendant's appearance in court, the safety of the community, or the integrity of the criminal justice process.'" Hyppolite, 236

13

N.J. at 164 (quoting State v. Ingram, 230 N.J. 190, 200-01 (2017) (second alteration in original)); see also N.J.S.A. 2A:162-19(e)(3).

N.J.S.A. 2A:162-19(f) permits the "reopen[ing]" of a detention hearing "before or after a determination by the court at any time before trial." Reopening should be permitted whenever "there is a reasonable possibility – not probability – that the result of the [detention] hearing would have been different" if the new information was available at the initial hearing. Hyppolite, 236 N.J. at 169. "Judges retain discretion to decide whether to reopen a detention hearing" under N.J.S.A. 2A:162-19(f). Id. at 171. When the trial court decides to reopen the hearing, it "must again decide whether the State has presented clear and convincing evidence to justify detention" pursuant to the factors set forth in N.J.S.A. 2A:162-18(a)(1). Id. at 172.

The court may then consider all the information bearing on the detention decision, ibid.; see also N.J.S.A. 2A:162-20, and must "assess[] the full body of evidence" presented and "make the required statutory findings," Hyppolite, 236 N.J. at 172. "To decide whether the State has satisfied its burden to justify pretrial detention, 'the court may take into account . . . [t]he nature and circumstances of the offense,' '[t]he weight of the evidence,' the defendant's 'history and characteristics,' the 'nature and seriousness' of the risk of danger and

obstruction the defendant presents, and Pretrial Services' recommendation." Id. at 164 (alteration in original) (quoting N.J.S.A. 2A:162-20).

In the present matter, the trial court made detailed findings supporting its decision to reopen defendant's detention hearing, which the State does not dispute. Instead, the State primarily argues defendant's criminal history and motor vehicle violations, including his 2014 conviction for eluding police during a DWI incident, evince defendant's "defiance" of the law and court orders. The State further contends the remote alcohol monitoring system can only alert authorities that defendant has consumed alcohol; it "cannot physically prevent defendant from once again driving while intoxicated." For the first time on appeal, the State asserts utilization of a "pricey" monitoring system, which is available only to defendant's who can bear the cost, countervails the purpose of the CJRA.

Although the State emphasizes the potential flaws in the remote alcohol monitoring system, the State presented no evidence to counter Clark's testimony that he would immediately report a violation. Nor does the record support the State's cost-disparity argument. Indeed, the CJRA does not prohibit trial courts from imposing monetary conditions. See N.J.S.A. 2A:162-18(a)(1). Moreover, the court imposed numerous conditions, in addition to random alcohol testing,

to reasonably assure the safety of the community. As one notable example, the court ordered defendant to "compl[y] with alcohol, substance abuse and mental health treatment."

In summary, the court considered all evidence presented by the parties at the initial hearing and the new information submitted at the reopened hearing and found detention was not warranted under the factors set forth in N.J.S.A. 2A:162-18(a)(1). See Hyppolite, 236 N.J. at 172. Moreover, the court made credibility findings about defendant's third-party custodians that are entitled to our deference. See Elders, 192 N.J. at 244. Based on our discretionary standard of review, see S.N., 231 N.J. at 500, we find no basis to disturb the trial court's order.

We affirm the trial court's order granting defendant's pretrial release. To permit the State to seek further relief from the Supreme Court, however, we stay defendant's release for five days.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3234-21